[Civ. No. 1264. Fifth Dist., Aug. 31, 1971.]

JACK GREENFIELD et al., Plaintiffs and Respondents, v.
INSURANCE INCORPORATED, Defendant and Appellant.

[Civ. No. 1383. Fifth Dist. Aug. 31, 1971.]

JACK GREENFIELD et al., Plaintiffs and Appellants, v.
INSURANCE INCORPORATED, Defendant and Respondent.

(Consolidated Appeals.)

## COUNSEL

Bolton & Hemer, John S. Bolton, Edward L. Lascher and Richard E. Rader for Defendant and Appellant and for Defendant and Respondent.

Vizzard, Baker, Sullivan, McFarland & Long and James·Vizzard for Plaintiffs and Respondents and for Plaintiffs and Appellants.

## OPINION

**FRANSON, J.\***—

### STATEMENT OF THE CASES

On May 3, 1967, Greenfield filed a complaint against Insurance, alleging breach of oral contract, negligence and fraud, based on a failure of Insur-

*Assigned by the Chairman of the Judicial Council.

ance to obtain for Greenfield a business interruption insurance policy covering mechanical breakdown. On March 27, 1969, after a court trial, judgment was entered on the second and third causes of action in favor of Greenfield in the sum of $44,345.42, plus interest at 7 percent per annum from December 5, 1966, to the date of judgment, for a total of $51,508.32.

On October 20, 1969, Greenfield filed a second complaint against Insurance, seeking damages of one-quarter of a million dollars for loss of value of his business, again on the theories of negligence and fraud arising out of the same facts alleged and presumably proved in the first action. On April 28, 1970, the trial court sustained a demurrer to the second complaint without leave to amend. On May 13, 1970, Greenfield appealed from the order sustaining the demurrer. On November 2, 1970 Insurance filed a motion to dismiss the appeal because no judgment of dismissal had been entered on the order sustaining the demurrer. On November 9, 1970, a judgment of dismissal was entered by the trial court. On November 18, 1970 the record on appeal was augmented to include the judgment. The motion to dismiss appeal No. 1383 was submitted for ruling with the decision on the merits of the appeal.

Greenfield had been in the scrap iron and metal business for many years. Insurance is an insurance brokerage firm and had agency agreements with various companies, including Fireman's Fund. Carbett and Klemm were officers of Insurance. For 10 years prior to 1966 Insurance had handled the insurance needs of Greenfield and he relied on their expertise and advice in connection with his insurance matters.

In the early part of 1966 Greenfield purchased an auto shredder for use in his business. The cost of the shredder was in excess of $200,000, and its purchase was financed through the Bank of America. While the shredder was being shipped from South Carolina to Greenfield's place of business, Greenfield talked with Carbett about fire and extended insurance coverage on the shredder, and specifically requested business interruption insurance covering a mechanical breakdown of the shredder. Greenfield advised Carbett of the security obligation to the bank, which called for monthly payments in excess of $5,000, and explained to Carbett the importance of insuring against a breakdown. Greenfield testified that around April 1, 1966, Carbett called him on the telephone to inform him that he had obtained the type of coverage that Greenfield wanted and that "everything would be covered," except breakdown caused by flood or earthquake. On April 26, 1966, by memo to Fireman's Fund, Carbett requested the issuance to Greenfield of an "all-risk" business interruption policy, providing for payments of $500 a day, with the only exclusions to be for

flood and earthquake. A copy of this memo was mailed to Greenfield. Carbett testified that on April 28, 1966, he told Greenfield he had obtained the policy he (Greenfield) wanted.

Shortly thereafter an original and a copy of a policy were forwarded by Fireman's to Insurance, who in turn forwarded the original policy to Greenfield and placed the copy in a file. Neither Insurance nor Greenfield read the policy when received. The policy provided fire and extended coverage for loss or damage to the shredder for a three-year period, commencing April 15, 1966, and provided for payments to the insured for business interruption due to "perils insured," at the rate of $500 for each work day during the period of suspension of business, excluding the first three days of breakdown. It specifically excluded loss caused by a mechanical breakdown. The premium for the policy was $11,948.

On June 27, 1966, there was a breakdown of the shredder. The shredder was out of operation until July 22, 1966. It ran until October 24, 1966, when it broke down a second time and was inoperative until December 22, 1966. Greenfield expended $1,345.42 to expedite repairs on the shredder during the two breakdowns.

On December 5, 1966, Greenfield was notified by Fireman's that the loss was not covered by their policy.

After learning that he was not covered by the Fireman's policy, Greenfield made contact with an insurance firm at Tacoma, Washington. The firm was an agent of Home Insurance Company, which specialized in "boiler and machinery" coverage of the type desired by Greenfield. On December 16, 1966, a member of the Tacoma firm wrote Greenfield a letter summarizing the coverage for machinery breakdown that would be available under their business interruption policy. The letter indicated that the insurance would cover, subject to the provisions of the policy, the amount actually expended by Greenfield to repair or replace property damaged by an accidental breakdown; that a "use and occupancy" endorsement could be written to provide $500 per day coverage for each day of total prevention of operation. The letter referred to the shredder and quoted a three-year advance premium of $6,229. Fire and extended coverage would not be included under the policy. Greenfield turned the letter over to Klemm with instructions to follow through with the coverage. While the Home policy was not received in evidence, the evidence indicates that Insurance was able to obtain for Greenfield a policy in accordance with the letter of December 16, 1966. Carbett testified that the policy from Home included mechanical breakdown and that "there were no exclusions." Klemm testified that the insurance was placed, and in response to a question as to whether interruption insurance covering mechanical

breakdown was a "very unusual type of coverage," responded, "With most carriers, yes. It does not seem to be with the Home Indemnity Company, however."

APPEAL NO. 1264

■ The rules by which this court is bound in considering the sufficiency of the evidence to support a judgment are clear. This court's power begins and ends with a determination of whether or not there is substantial evidence to support the conclusions of the trier of fact. If there is such evidence, we must affirm even though we may feel the judgment is against the preponderance of the evidence. ■ All legitimate and reasonable inferences must be resolved in favor of respondent and we cannot substitute our judgment for that of the trial judge (*Continental Dairy Equip. Co.* v. *Lawrence*, 17 Cal.App.3d 378, 382 [94 Cal.Rptr. 887]; *Callahan* v. *Gray*, 44 Cal.2d 107, 111 [279 P.2d 963]).

In considering the issues raised by appellant, we note that no findings of fact and conclusions of law were made. ■ Where findings and conclusions are waived (here by failure to request findings within the time provided by rules of court), every intendment is in favor of the judgment and it must be presumed that the trial judge found all the facts necessary to support the judgment (*City of National City* v. *Dunlop*, 86 Cal.App.2d 380 [194 P.2d 788]; *Block* v. *Laboratory Procedures, Inc.*, 8 Cal.App.3d 1042 [87 Cal.Rptr. 778]).

There is substantial evidence in the record to support a finding of negligence. There was a duty on the part of Insurance to exercise reasonable care in seeking coverage as requested by Greenfield, and a violation of that duty by not obtaining the coverage or by failing to notify Greenfield that the policy, as issued by Fireman's, excluded such coverage. There is also substantial evidence to support a finding of negligent misrepresentation of a material fact—that Greenfield had the coverage he wanted.

■ Insurance contends that the judgment must fall due to the absence of a causal relationship between the negligence and fraud and the damages claimed to have been suffered. It also contends that there was insufficient evidence of justifiable reliance to support the fraud judgment, and insufficient evidence of both the fact and quantum of damages.

For Greenfield to recover, Insurance's conduct must have been a legal (proximate) cause of the injury. ■ The foundational element of legal cause is cause in fact. It is necessary to show that the conduct contributed in some way to the injury (here the lack of coverage), so that "but for" the conduct the injury would not have occurred (Rest. 2d, Torts, §§ 430, 432, subd. 1; 2 Witkin, Summary of Cal. Law (1960) Torts, § 284,

p. 1484). If the act or omission was a substantial factor in bringing about the result, it will be regarded as a legal cause of the injury (*Barclay Kitchen, Inc.* v. *California Bank,* 208 Cal.App.2d 347, 354 [25 Cal.Rptr. 383]; *Thomsen* v. *Rexall Drug & Chemical Co.,* 235 Cal.App.2d 775, 783 [45 Cal.Rptr. 642]; Rest. 2d, Torts, § 431). ██ Greenfield requested coverage to insure against a breakdown of the shredder. He was advised by Insurance that they had obtained the coverage for him, when in fact they had not. He relied on their representation and did not look elsewhere for coverage. In December, within a few days after learning that he was not covered, he was able to find a company that would write such coverage. While the Home policy was not received in evidence, the letter from its agent, together with the testimony of Carbett and Klemm that the policy was issued and covered mechanical breakdown, are sufficient to support a finding that the Home policy would have been available to Greenfield before his loss occurred. If Insurance had not misrepresented the fact of coverage under the Fireman's policy, it is reasonable to infer that Greenfield would have obtained the coverage from Home. ██ Incompetent or otherwise inadmissible evidence, such as hearsay or secondary evidence violating the best evidence rule, admitted without objection, is sufficient to sustain a judgment. (Evid. Code, § 140, comment; *People ex rel. Dept. of Public Works* v. *Alexander,* 212 Cal.App.2d 84, 98 [27 Cal.Rptr. 720]; *Sublett* v. *Henry's etc. Lunch,* 21 Cal.2d 273, 275-276 [131 P.2d 369].)

██ Indulging in all legitimate and reasonable inferences from the evidence, we conclude that the conduct of Insurance was a substantial factor in bringing about the harm to Greenfield.

██ Appellant next contends that the judgment for fraud cannot be sustained because of the absence of sufficient evidence to show reliance by Greenfield on the negligent misrepresentation by Insurance. Appellant also argues that Greenfield unreasonably incurred his damages by failing to read the Fireman's policy. Neither contention has merit. There is ample evidence to support the implied finding that Greenfield justifiably relied on Carbett's representation that he had the coverage he wanted. Greenfield had relied on Insurance for years in all aspects of his insurance business. It was reasonable that Greenfield would accept Carbett's representations as to coverage and not read the policy. As to the contention that Greenfield unreasonably incurred his damages, it seems that Insurance is contending that Greenfield was contributorily negligent in failing to read the policy. Inasmuch as appellant did not allege contributory negligence as an affirmative defense, the issue was not before the trial court and it cannot be raised on appeal. As to mitigation of damages, there is no evidence upon which the trial court could find that Greenfield could have avoided his damages by reasonable efforts not taken (*Green* v. *Smith,* 261

Cal.App.2d 392, 396 [67 Cal.Rptr. 796]).

■ We next turn to the question of damages. The dates of the two breakdown periods were not in issue at the trial. The first breakdown was for a period of 26 days, and the second breakdown was for a period of 60 days, a total of 86 days. The trial judge determined the number of days of breakdown, multiplied the number by $500, added the moneys expended to expedite repairs of $1,345.42, and fixed damages for the total amount.

Under Civil Code section 3333, the measure of damages arising from tort is the amount which will compensate the aggrieved party for all detriment proximately caused thereby, whether anticipated or not. The detriment suffered by Greenfield was the loss of coverage which he would have received under the Home policy (or a like policy issued by another company), except for the negligence and fraud of Insurance. The evidence of the Home policy shows that Greenfield would have received $500 a day for each day of breakdown (not excluding the first three days of each breakdown, as under the Fireman's policy), together with amounts expended in repairing the shredder. We note that the letter of December 16, 1966, provides that "liability begins 5th midnight of the notification of accident." We construe this provision, when read with the provision for coverage of a stated amount for each day of total prevention of operation, to mean that the Home policy would not cover short-term breakdowns of five days or less but would provide coverage for each day of breakdown if it is of a duration longer than five days.

■ However, the trial court failed to deduct the cost to Greenfield of the Home policy. This was error as Greenfield's economic loss was the difference between what he would have paid for the Home policy and what he would have received from Home if he had its coverage. The evidence of the Home policy shows a cost of $6,229. No fire or extended coverage was included. There is no evidence upon which an allocation can be made between the premium cost for repair and replacement coverage and the interruption coverage. Recognizing the high risk of indemnifying against a mechanical breakdown, we conclude that it is probable that a substantial portion of the cost of the Home policy was for the breakdown insurance. The entire amount should be deducted in calculating damages.

We also conclude that the cost of the Fireman's policy, to the extent it is allocable to the interruption insurance, which Greenfield did not receive, should be added to his damages. The evidence shows that of the $11,948 premium, $10,125 was for fire and extended coverage, and $1,823 was for the business interruption coverage. Inasmuch as Greenfield received fire and extended coverage, the cost of such coverage cannot be included in his damages.

In summary, Greenfield's damages were $500 times 86 days, or $43,000,

plus $1,823 (premium paid for coverage not received under Fireman's policy), less $6,229 (cost of Home policy), plus repair costs of $1,345.42, for total damages, exclusive of interest, of $39,939.42.

In answer to appellant's contention that the damages are uncertain and not capable of calculation, we cite the rule that the wrongdoer must bear the risk of uncertainty which his wrong has created (*Speegle v. Board of Fire Underwriters*, 29 Cal.2d 34, 46 [172 P.2d 867]; *Zinn v. Ex-Cell-O Corp.*, 24 Cal.2d 290, 297-298 [149 P.2d 177]; *American Loan Corp. v. California Commercial Corp.*, 211 Cal.App.2d 515, 524 [27 Cal. Rptr. 243]). Once certainty as to the fact of damage is established, less certainty is required as to the amount of damage (*Tomlinson v. Wander Seed & Bulb Co.*, 177 Cal.App.2d 462, 474 [2 Cal.Rptr. 310]).

There is sufficient evidence to support a finding of both the fact and quantum of damage.

Appellant next contends that it was error to allow prejudgment interest. Civil Code section 3287 provides that every person who is entitled to recover damages certain or capable of being made certain by calculation, and the right to recover which is vested in him on a particular day, is entitled to interest on the damages from that particular day. Civil Code section 3288 authorizes interest in fraud actions in the discretion of the trier of fact (*Vogelsang v. Wolpert*, 227 Cal.App.2d 102, 125 [38 Cal.Rptr. 440]; *Nathanson v. Murphy*, 147 Cal.App.2d 462, 467 [305 P.2d 710]; *Katz v. Enos*, 68 Cal.App.2d 266, 278 [156 P.2d 461]). Interest was awarded from December 5, 1966, the date that appellant received notice from Fireman's that his claimed loss was not covered by their policy. On that date appellant's cause of action accrued against Insurance. The number of days of breakdown and the per diem compensation were certain. The expenditures by Greenfield to expedite repairs were capable of ascertainment and were not in dispute at the trial. The cost of interruption coverage by Home was ascertainable by inquiry to Home, and the portion of the Fireman's premium allocable to interruption insurance was ascertainable by inquiry to Fireman's. We conclude there was sufficient certainty to authorize prejudgment interest as damages (*Ferro v. Citizens Nat. Trust & Sav. Bank*, 44 Cal.2d 401, 415-416 [282 P.2d 849]).

Appellant next contends that Greenfield is not entitled to interest as damages inasmuch as the complaint does not contain an allegation of entitlement to interest, nor does it contain a specific prayer for interest. This contention is without merit. (*Slobojan v. Western Travelers Life Ins. Co.*, 70 Cal.2d 432, 443 [74 Cal.Rptr. 895, 450 P.2d 271]; *Oil Base, Inc. v. Transport Indem. Co.*, 148 Cal.App.2d 490, 493 [306 P.2d 924].) We

calculate interest on $39,939.42 at 7 percent per annum from December 5, 1966, to March 27, 1969, at $6,458.98.

The judgment as modified is in the total sum of $46,398.40. As modified, the judgment is affirmed. Respondent shall recover costs.

## APPEAL No. 1383

As to appeal No. 1383, the motion to dismiss the appeal for lack of jurisdiction is denied. The appeal is to be considered as taken from the judgment. (*Loop* v. *State of California,* 240 Cal.App.2d 591 [49 Cal. Rptr. 909]; Cal. Rules of Court, rule 2 (c).)

On the merits, we conclude that the demurrer was properly sustained. A party may not split a cause of action, using the same wrong as the basis for separate suits. Greenfield was bound in his first action to prove all prospective damages caused by the wrongful acts of Insurance. The first action is a bar to the second action (*Reichert* v. *General Ins. Co.,* 68 Cal.2d 822, 832 [69 Cal.Rptr. 321, 442 P.2d 377]; *McFaddin* v. *H. S. Crocker Co.,* 219 Cal.App.2d 585, 589 [33 Cal.Rptr. 389]; *Savage* v. *Emery,* 255 Cal.App.2d 603, 606 [63 Cal.Rptr. 566]).

The judgment is affirmed.

Stone, P. J., and Gargano, J., concurred.

A petition for a rehearing was denied September 29, 1971, and the petition of Insurance Incorporated for a hearing by the Supreme Court was denied November 4, 1971.