[No. D014452. Fourth Dist., Div. One. May 27, 1993.]

LARRY CLEMENT et al., Plaintiffs and Respondents, v.
GORDON SMITH et al., Defendants and Appellants.

**COUNSEL**

Donald P. Tremblay, Jennings, Engstrand & Henrikson, Gerard Smolin, Jr., and Tamara L. Reed for Defendants and Appellants.

Robert G. Dyer for Plaintiffs and Respondents.

**OPINION**

**WIENER, J.**—Following a court trial, defendants CSI Insurance Agency, Inc., and CSI agent Gordon Smith were found liable to their former client,

Larry Clement,[1] on a theory of negligent misrepresentation based on statements made by Smith assuring Clement he had insurance coverage which he did not in fact possess. In this appeal, defendants assert error in various legal rulings and factual determinations by the trial court. We find no error and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1984 Clement sold Thomas Carter a piece of property Carter was interested in developing. A dispute between the two arose when Carter later learned there were limitations on the number of units which could be built on the property. In March 1986, Clement and Carter settled this dispute pursuant to a written understanding (Agreement Resolving Dispute or ARD). Included in the ARD was a provision requiring Clement, if certain conditions were met, to subordinate the trust deed securing a $150,000 promissory note to construction financing Carter expected to obtain.

Beginning in 1984, Clement's insurance needs were handled by Gordon Smith, an agent with the CSI Insurance Agency. Among other insurance Smith obtained a contractual liability policy for Clement. Shortly after doing so, Clement told Smith about the problems he was having with Carter regarding the land sale to Carter. Smith assured Clement the contractual liability policy would provide coverage for any problems arising out of the Carter deal.

In October 1986 Carter advised Clement he had obtained a construction loan and requested Clement sign a subordination agreement. Concerned that Carter had failed to fulfill his responsibilities under the ARD, Clement balked. He contacted Smith to reassure himself that if he refused to sign the subordination agreement and litigation ensued, the contractual liability policy would provide coverage and defray the costs of litigation. Clement testified he could not personally afford to defend against a lawsuit brought by Carter and that if he did not have insurance coverage he would have sought "other ways of solving this problem . . . ." Smith reviewed a copy of the ARD and confirmed Clement was covered.

The parties and their attorneys discussed the issue over the ensuing four months. Finally in February 1987 after they were unable to resolve their dispute, Carter sued Clement for breach of contract. Clement immediately forwarded a copy of the complaint to Smith who passed it on to Scottsdale Insurance Company which had written Clement's policy in May 1986. Two

---

[1]Also appearing as plaintiffs were Clement's wife, Carol, and their corporate business entity, Clement Development, Inc.

months later Scottsdale notified Clement there was no coverage. Attempts by both Clement and CSI to persuade Scottsdale to change it decision proved unsuccessful. When Clement later spoke with Smith, Smith admitted having told him he had coverage. Smith then apologized to Clement, saying he "guess[ed]" he had been "wrong."

By the time Scottsdale denied coverage, Clement's dispute with Carter had progressed to a point where Clement was unable to settle the matter. After a narrowing of issues by stipulation, the Carter v. Clement matter proceeded to judgment. The court determined Clement had no legal right to refuse to sign the subordination agreement, at which point Clement agreed to do so. As a result no damages were awarded, but the court found Carter was entitled to attorney fees and costs in the amount of $97,000.

Clement then filed this action against Smith and CSI for negligent misrepresentation, seeking recovery of the $97,000 he was forced to pay to Carter as well as approximately $90,000 he incurred for his own attorney fees in the Carter v. Clement action. The court found in favor of Clement, concluding that Smith misrepresented the extent of Clement's coverage without any reasonable basis for doing so. It also determined that Clement's reliance on Smith's representations was reasonable. The court found that the misrepresentation caused Clement's damages because Clement had feared a lawsuit with Carter—and expressed this fear to Smith—long before the subordination dispute actually arose. Had Clement known his contractual liability policy would not provide coverage, he could have obtained a directors' and officers' liability policy which would have provided the coverage he sought at a cost of approximately $10,000. Allowing for this and other deductions (not challenged by either Clement or Smith), the court awarded Clement $158,743.65.

DISCUSSION

Defendants' arguments fall into three general categories. First, they argue Smith's statements to Clement cannot be deemed misrepresentations because Smith never said a *breach* of the ARD would be covered and because Smith's statements before the purchase of the Scottsdale policy all related to Clement's earlier dispute with Carter. Second, defendants contend that an insured can never reasonably rely on an insurance agent's representations regarding coverage. Finally, they assert any misrepresentations by Smith did not cause Clement's damages because Clement's breach of the ARD was an uninsurable willful act under Insurance Code section 533. For reasons we shall explain, we reject defendants' arguments and affirm the judgment.

*1. Substantial evidence supports the trial court's determination that Smith misrepresented the extent of coverage purchased by Clement.*

■ Defendants suggest that since the dispute between Clement and Carter concerning the signing of the subordination agreement did not occur until after the issuance of the Scottsdale policy, Smith could not possibly have misrepresented to Clement that litigation arising from such a dispute would be covered. The argument fails, however, because defendants have adopted a far too narrow view of the actionable misrepresentation.

First of all, Clement introduced evidence of misrepresentations by Smith both before and after the policy was purchased and both before and after the subordination dispute arose. Defendants focus on the period before the policy was purchased on the theory that later misrepresentations cannot be deemed to have caused Clement to have purchased the Scottsdale policy in lieu of another alternative. Later misrepresentations, however, may have deflected Clement from purchasing *additional* insurance, which was the theory adopted by the trial court. Under this theory, misrepresentations of coverage made at any time before the beginning of the subordination dispute would be relevant.

In any event, the evidence indicates Clement discussed the Carter situation with Smith as early as 1984 and that Smith told Clement he was covered for "any lawsuit [he might] have with Mr. Carter in regard to the sale of the property." Significantly, Smith never told Clement that coverage was limited to cases of "personal injury" and "property damage," the provisions later relied on by Scottsdale in denying coverage. In our view, the trial court's conclusion that these early broad statements constituted misrepresentations is amply supported by the record.

Similarly, Smith's later statements made after the signing of the ARD could be deemed misrepresentations notwithstanding that he did not specifically state that a "breach of the ARD" was covered. The trial court legitimately concluded that Smith's broad statements of coverage reasonably implied coverage without qualification.

*2. It cannot be stated as a matter of law that an insured can never reasonably rely on a selling agent's representations as to coverage; substantial evidence supports the conclusion that Clement's reliance on Smith was reasonable.*

■ Citing *Stivers* v. *National American Insurance Co.* (9th Cir. 1957) 247 F.2d 921, defendants contend an insured is entitled to rely on an agent's

representations of coverage only if there is no "patent conflict with the terms of [the] policy." (*Id.* at p. 928.) They argue there was no reasonable reliance here because the Scottsdale policy clearly limits coverage to cases of "personal injury" or "property damage." Thus, they conclude, Clement could not reasonably believe he had coverage for liability for breach of contract.

When dealing with a contract as adhesive as the typical insurance policy, we are unwilling to impose on the insured so onerous a burden as would automatically defeat any agent's liability for misrepresentation. Certainly an insured cannot remain intentionally ignorant of the terms of his or her policy. Here, however, we have a factual finding by the trial court that Clement reasonably relied on Smith's representation of coverage. That finding is supported by substantial evidence where the record shows Smith's representations were in no way cautionary or equivocal. Absent some notice or warning, an insured should be able to rely on an agent's representations of coverage without independently verifying the accuracy of those representations by examining the relevant policy provisions. This is particularly true in view of the understandable reluctance of an insured to commence a study of the policy terms where even the courts have recognized that few if any terms of an insurance policy can be clearly and completely understood by persons untrained in insurance law. (See *Raulet* v. *Northwestern etc. Ins. Co.* (1910) 157 Cal. 213, 230 [107 P. 292]; *Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773, 783 [157 Cal.Rptr. 392, 598 P.2d 45].)

Other courts have reached consistent conclusions. In *Greenfield* v. *Insurance, Inc.* (1971) 19 Cal.App.3d 803 [97 Cal.Rptr. 164], the insured (Greenfield) asked his insurance broker to obtain business interruption insurance in conjunction with the purchase of a new piece of equipment. The broker obtained a policy and advised Greenfield that the only exclusions were for a breakdown due to flood or earthquake. In fact, the policy obtained by the broker included a broad exclusion for any type of "mechanical breakdown." On appeal following a judgment in favor of Greenfield on a theory of negligent misrepresentation, the broker argued a lack of reasonable reliance by Greenfield because he failed to read the policy. Rejecting the argument, the court explained, "There is ample evidence to support the implied finding that Greenfield justifiably relied on [the broker's] representation that he had the coverage he wanted. Greenfield had relied on [the broker] for years in all aspects of his insurance business. It was reasonable that Greenfield would accept [the broker's] representations as to coverage and not read the policy." (*Id.* at p. 811.)

Defendants seek to distinguish *Greenfield* on the theory that an insured may rely on an agent's representations of coverage only where they are

made in conjunction with the initial purchase of an insurance policy. They assert that any misrepresentations made by Smith in this case concerned coverage of an existing policy, not a policy Clement was negotiating to buy. From this premise they go on to argue that a selling agent should never be liable for essentially gratuitous misrepresentations as to the coverage of an existing insurance policy, since that is a contractual issue between the insurer and the insured.

The evidence fully supports the conclusion that Smith misrepresented the coverage of insurance he purchased for Clement as early as the fall of 1984 when they discussed the possibility of litigation with Carter. While it appears these comments constituted misrepresentations of the coverage of an *existing* policy, defendants ignore the fact that Smith's statements informed Clement's decisions regarding the purchase of later policies, specifically the 1986 Scottsdale policy. In the absence of later disclaimers an insured can reasonably rely on prior coverage representations by his agent when he or she decides to renew an insurance policy. In that sense, the agent's representations of coverage as to an *existing* policy are the functional equivalent of representations made by the agent to induce the purchase of *new* insurance.

Perhaps more analogous to this case is the situation in *Westrick v. State Farm Insurance* (1982) 137 Cal.App.3d 685 [187 Cal.Rptr. 214]. There, in prior discussions with his agent an insured (Westrick) had expressed concern about immediate insurance coverage for a commercial vehicle he was contemplating purchasing. The agent told him there was a 30-day automatic coverage clause in his policy. The agent failed to explain that the automatic coverage clause applied only to a vehicle purchased as a replacement for an existing covered vehicle and coverage in any event was limited to four-wheel vehicles. Some months later Westrick purchased a business for his son which included a six-wheel welding truck. He called his agent to request insurance but the agent was unavailable. Another agent took the call and told Westrick that the individual he normally dealt with would be in the next day. When Westrick offered to provide information about the just-purchased vehicles, he was told it was not necessary. Westrick therefore assumed that the 30-day automatic coverage provision afforded him coverage. The truck was involved in an accident the next day before Westrick spoke with his agent, and the insurer denied coverage.

For reasons similar to those cited in *Greenfield*, the court held it was a question of fact whether Westrick's reliance on his agent was reasonable. It explained that while it was clear an agent could be liable for his negligent failure to procure insurance as promised, "it does not follow that he can avoid liability for foreseeable harm caused by his silence or inaction merely

because he has not expressly promised to assume responsibility." (*Id.* at p. 691.) Here, the fact that Smith never promised to procure insurance to cover Clement's breach of the ARD is not determinative. As was the case in *Westrick*, Clement could reasonably rely on Smith's representations that Clement was already covered in failing to seek additional coverage.

3. *Causation was adequately established by the fact that Clement could have obtained other insurance which would have provided coverage for his liability to Carter.*

■ A theory of causation proffered by Clement and adopted by the trial court was based on the testimony of Clement's insurance expert, Richard Masters. Masters testified that had Clement known his existing policy did not provide coverage for litigation arising out of a dispute over the ARD, he could have obtained such coverage by purchasing a directors' and officers' (D&O) liability policy. Defendants take issue with this theory by arguing that D&O coverage would not have been available because Insurance Code section 533 prohibits insurance for a "willful act." They contend that Clement's breach of the ARD was a "willful act" which is statutorily uninsurable.

Most of the cases construing Insurance Code section 533 involve insurance coverage for torts committed by an insured. (See, e.g., *J.C. Penney Casualty Ins. Co.* v. *M. K.* (1991) 52 Cal.3d 1009 [278 Cal.Rptr. 64, 804 P.2d 689].) Indeed, the Supreme Court has held that the purpose of section 533 is to discourage willful torts. (*Id.* at p. 1021.) We are aware of only one case which considers section 533 in the context of insurance which provided coverage for an insured's breach of contract. In *Russ-Field Corp.* v. *Underwriters at Lloyd's* (1958) 164 Cal.App.2d 83 [330 P.2d 432], the insured, a motion picture producer, contracted with an actor for a role in a planned movie. After the contract was signed, the producer authorized substantial changes in the script to which the actor objected. The producer hired a new actor to portray the revised role and the original actor sued for breach of contract. After the case was settled, the insurer disputed its obligation to pay on grounds the producer's alleged breach of contract was a "willful act" made uninsurable by section 533. The trial court's finding in favor of the insured was affirmed on appeal. The appellate court noted the trial court had found "that '. . . if there were such a breach, it was not an intentional or willful or deliberate breach by plaintiff, but was a breach which resulted in the ordinary course of business from negligent act, error and lack of due care on the part of plaintiff and its employees.' " (*Id.* at p. 95.) The court went on to explain, "A 'wilful act' as used in this statute connotes something more blameworthy than the sort of misconduct involved in ordinary negligence,

and something more than the mere intentional doing of an act constituting such negligence. [Citations.] [¶] The finding that the breach, if one occurred, was not 'wilful' is supported by substantial evidence." (*Id.* at p. 96.)

Similarly here, Clement testified that although he intentionally refused to sign the subordination agreement, he did not intend to breach the ARD or knowingly do so. He firmly believed Carter had failed to fulfill his contractual obligations which justified Clement in refusing to sign the subordination agreement. Although the court in the Carter v. Clement action later concluded he was wrong,[2] the trial court here properly determined Clement's mistake constituted "a breach which resulted in the ordinary course of business from negligent act, error and lack of due care" on his part. As in *Russ-Field Corp.*, such a finding is amply supported by substantial evidence.

## DISPOSITION

Judgment affirmed.

Kremer, P. J., and Huffman, J., concurred.

Appellants' petition for review by the Supreme Court was denied August 19, 1993. Panelli, J., was of the opinion that the petition should be granted.

---

[2]Along similar lines defendants point to the court's finding in Carter v. Clement that Clement had no legal right to refuse to sign the subordination agreement and argue that such a finding collaterally estops Clement from asserting that his breach of the ARD was not a "willful act." To the contrary however, as we have explained, the judgment in Carter v. Clement establishes at most that Clement acted unreasonably (i.e., negligently) in refusing to sign the subordination agreement.