[No. B097130. Second Dist., Div. Seven. Dec. 19, 1996.]

PAPER SAVERS, INC., Plaintiff and Appellant, v.
JOHN DAVID NACSA et al., Defendants and Respondents.

COUNSEL

Moser & Sanders and Teresa M. Sanders for Plaintiff and Appellant.

Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone and Stephan S. Cohn for Defendants and Respondents.

OPINION

JOHNSON, J.—An insured appeals from a summary judgment entered in favor of an insurance company and insurance agent. The insured alleges the agent misled him regarding the extent of coverage for losses of business personal property provided by the insurance policy he purchased. We conclude there are genuine issues of triable fact whether the agent made the representations, and if so, whether they were sufficient to impose a special duty on the insurer. Accordingly, we reverse.

### FACTS AND PROCEEDINGS BELOW

Mike Peltier (Peltier) was the president and sole shareholder of appellant, Paper Savers, Inc. (Paper Savers). In 1989, John David Nacsa (Nacsa), an agent for Truck Insurance Exchange (Truck), offered to provide Peltier's firm a commercial insurance policy.

According to Nacsa, he met a few times with Peltier at the Paper Savers facility before submitting the company's application for insurance coverage. Although he walked through the paper bag manufacturing plant, he was not asked to inventory or appraise the company's equipment or other personal property. Nacsa reviewed Paper Savers' existing policy providing for a total of $500,000 in liability and personal property coverage. He discussed various levels of coverage with Peltier, who ultimately decided $500,000 coverage for personal property was adequate.

Nacsa proposed two changes to Paper Savers' existing coverage. First, he recommended Peltier purchase business interruption insurance for Paper Savers which it did not have before. Second, Nacsa recommended a policy containing a "replacement cost coverage" endorsement with a policy limit of $500,000. In his declaration Nacsa explained this endorsement meant damaged property may be replaced with either used or new equipment, whichever is available, up to policy limits. Nacsa stated that under this type of

policy, the maximum liability Truck could incur would be the limit of $500,000. Nacsa explained a "replacement cost coverage" endorsement differs substantially from a "guaranteed replacement cost coverage" endorsement. With the latter type of policy, lost or damaged property can be replaced with new property without cost limitation and therefore could theoretically exceed policy limits.[1]

Peltier ultimately purchased several Truck insurance policies through Nacsa, including a $500,000 policy with the "replacement cost coverage" endorsement to insure against losses to Paper Savers' personal property.

Peltier's version of the factual circumstances surrounding the purchase of the Truck insurance policy differs substantially from Nacsa's.

Peltier was personally responsible for purchasing insurance for Paper Savers for the first time in 1988. In that year he purchased $200,000 in personal property insurance coverage through the Canadian Insurance Company. When Nacsa proposed he purchase a policy through Truck instead Peltier told Nacsa Paper Savers had since purchased additional machinery, refurbished other machinery and therefore required greater coverage than it had under the prior policy. He did not ask Nacsa to appraise or inventory Paper Savers' personal property nor request Nacsa's advice on the amount of total coverage Paper Savers required.

Before agreeing to purchase a Truck policy Peltier and Nacsa discussed the "replacement cost coverage" endorsement. Peltier testified he was not sophisticated in insurance matters and relied on Nacsa's expertise. According to Peltier, Nacsa told him the "replacement cost coverage" endorsement was an "extra binder" for which Paper Savers would have to pay an additional premium. Nacsa represented this endorsement and extra binder would provide full coverage to replace all business personal property in case of a total loss, regardless of the policy limit. According to Peltier, Nacsa told him he could now rest easy because he was fully insured against loss.

Peltier agreed to purchase the insurance coverage Nacsa recommended. Peltier did not read the insurance policies when he received them.

On May 27, 1991, Paper Savers was destroyed by fire. An insurance appraiser estimated the loss of business personal property to be as high as $2 million. Truck paid the policy limit of $500,000.

---

[1] A copy of the "replacement cost coverage" endorsement at issue in this case appears in the record. However, we are unable to compare its terms or definitions to Truck's "guaranteed replacement cost coverage" endorsement which is not in the record.

On March 11, 1994, Paper Savers filed a first amended complaint alleging causes of action for negligence and implied indemnity.[2] On July 10, 1995, Truck and Nacsa moved for summary judgment, alleging they owed no duty to ensure Paper Savers had adequate insurance coverage, and as a result its negligence action had to fail as a matter of law. Paper Savers opposed the motion. It argued there were triable issues of material fact whether Nacsa, as Truck's agent, had assumed a special duty to Paper Savers by representing to Peltier the "replacement cost coverage" endorsement was adequate to replace all lost or destroyed personal property in the event of a loss regardless of policy limits.

The trial court concluded there were no material factual issues to be tried and granted summary judgment in favor of Nacsa and Truck (insurers). The court found Peltier's allegation Nacsa negligently represented the effect of the "replacement cost coverage" endorsement, and thereby assumed a special duty toward him, unreasonable as a matter of law because it conflicted with the written terms of the insurance policy. In the absence of other facts indicating Nacsa's words or actions created a special relationship, the court concluded the general duty applied, and this duty does not impose any responsibility on insurers to ensure their insureds purchase any specific level of coverage.

Paper Savers appeals from the ensuing judgment.

## DISCUSSION

### I. *Standard of Review of Summary Judgment.*

■ Summary judgment is a severe remedy which is to be granted with caution. (*Dolquist* v. *City of Bellflower* (1987) 196 Cal.App.3d 261, 266 [241 Cal.Rptr. 706].) Where a defendant moves for summary judgment, his motion will only be granted if his declarations and admissible evidence either establish a complete defense to the plaintiff's action or conclusively negate a necessary element of the plaintiff's case and demonstrate, under any cause of action, no material factual issue requires resolution by trial. (*DeRosa* v. *Transamerica Title Ins. Co.* (1989) 213 Cal.App.3d 1390, 1395 [262 Cal.Rptr. 370].) In examining the sufficiency of declarations filed in connection with a summary judgment motion, the declarations of a moving party are strictly construed and those opposing the motion are liberally construed. (*Sheffield* v. *Eli Lilly & Co.* (1983) 144 Cal.App.3d 583, 611 [192 Cal.Rptr. 870].)

---

[2] The implied indemnity cause of action is not before us. It only becomes an issue if negligence is first proved.

Code of Civil Procedure section 437c provides a motion for summary judgment is properly granted only where "affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken" in support of and in opposition to the motion "show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subds. (b), (c).)

In this case we conclude there remain triable issues of fact whether Nacsa as Truck's agent negligently represented the meaning and effect of the "replacement cost coverage" endorsement to Peltier and thereby assumed a special duty to Paper Savers to ensure it had the coverage it thought it had purchased.

## II. An Agent's General Duty of Care Does Not Include Responsibility for Ensuring the Insured Has Adequate Coverage to Protect Against all Eventualities.

Whether a duty of care exists is a question of law for the court. (*Jones* v. *Grewe* (1987) 189 Cal.App.3d 950, 954 [234 Cal.Rptr. 717]; *Wilson* v. *All Service Ins. Corp.* (1979) 91 Cal.App.3d 793, 796 [153 Cal.Rptr. 121].) The decision in *Jones* is the starting point for the scope of the duty an agent owes his insured. In order to understand the competing legal issues, it is important to put *Jones* and several other cases in some sort of context.

In *Jones* a minor fell into a swimming pool and seriously injured herself. She brought an action against the owners of the pool for negligence. (*Jones* v. *Grewe, supra*, 189 Cal.App.3d at p. 953.) The owners cross-complained against the insurance agent[3] who had sold them liability insurance, alleging the insurance agent had breached a fiduciary duty by failing to ensure they had adequate liability insurance coverage. (*Ibid.*) The owners further alleged the agency had taken care of the owners' insurance needs for many years, held themselves out to be experts, and the owners had thus relied on the agency's expertise in handling their insurance matters. (*Ibid.*)

The *Jones* court acknowledged that ordinarily an insurance agent assumes only those duties found in any agency relationship such as "reasonable care, diligence, and judgment in procuring the insurance requested by an insured."

---

[3]In the recital of the facts the court actually uses the term "broker" rather than "agent." Throughout the rest of the opinion both terms are used. In the instant case it is clear Nacsa was an agent acting on behalf of Truck. It is not clear in *Jones* which it was, but the distinctions between agent and broker and the principles of dual agency are not directly in issue in the case at bar, and we, therefore, need not address them.

(189 Cal.App.3d at p. 954, citing to 3 Couch on Insurance (2d ed. 1984) Duties and Liabilities of Agent, § 25:37, p. 336.) Building on this initial premise, the *Jones* court concluded an agent has no duty to advise the insured on specific insurance matters. (*Jones* v. *Grewe, supra*, 189 Cal.App.3d at p. 954.) Nevertheless, the *Jones* court acknowledged a special duty may be created by express agreement or by the agent holding himself out to be more than an "ordinary agent." (*Id.* at pp. 954-955.)[4]

The court then evaluated the facts before it under the rule it structured and concluded the insurance agent assumed no special duty toward these insureds. There was no express agreement creating a broader agency relationship to advise, suggest or procure "liability insurance in an amount sufficient to protect appellants' personal assets and satisfy any judgment against appellants. . . ." (*Jones* v. *Grewe, supra*, 189 Cal.App.3d at p. 956.) Thus, the court held the long-term relationship between the insured and the agent, the insureds' reliance on the agency, coupled with a request for sufficient coverage, were all "insufficient to imply the existence of a greater duty." (*Ibid.*)

■ In the absence of an express agreement to ensure adequate coverage or a holding out by the agent to assume greater duties than otherwise implied in the agency relationship, the onus is thus squarely on the insured to inform the agent of the insurance he requires. (189 Cal.App.3d at p. 956 see also *Gibson* v. *Government Employees Ins. Co.* (1984) 162 Cal.App.3d 441, 452 [208 Cal.Rptr. 511] [not part of general duty to advise on optimum coverage amounts or types of insurance available on the general market or to warn when coverage is too low]; *Shultz Steel Co.* v. *Hartford Accident & Indemnity Co.* (1986) 187 Cal.App.3d 513, 522-523 [231 Cal.Rptr. 715] [public policy militates against imposing duty on insurer to advise of availability of coverage beyond that requested by insured]; *Ahern* v. *Dillenback* (1991) 1 Cal.App.4th 36, 42-43 [1 Cal.Rptr.2d 339] [agent has no duty to procure more or different insurance coverage than insured requested]; *Malcom* v. *Farmers New World Life Ins. Co.* (1992) 4 Cal.App.4th 296, 303-304 [5 Cal.Rptr.2d 584] [insurer had no affirmative duty to advise insured specifically about suicide exclusion and its effect on coverage].)

III. *An Insurance Agent Can Assume a Special Duty Toward His Insured by Misrepresenting Policy Terms.*

■ In addition to an express agreement to ensure adequate coverage or a holding out by the agent to assume a greater duty toward an insured, an

---

[4]The language in *Jones* is simply "a holding out," but a fuller understanding comes from its source for this language: "[W]here an agent holds himself out as a consultant and counselor, he does have a duty to advise the insured as to his insurance needs, particularly where such needs have been brought to the agent's attention." (16A Appleman, Insurance Law and Practice (1981) § 8836, pp. 65-66.)

insurance agent may also assume a greater duty toward his insured by misrepresenting the policy's terms or extent of coverage. For example, in *Westrick* v. *State Farm Ins.* (1982) 137 Cal.App.3d 685 [187 Cal.Rptr. 214], the appellate court held an insurance agent may be liable for his negligent failure to accurately apprise an insured of his policy terms upon request. In *Westrick* the court found the agent was negligent in failing to inform the insured a six-wheel commercial truck would not be covered under his existing passenger car policy when the insured sought assurances it would be. The *Westrick* court held that based on the insured's inquiries and the agent's superior knowledge of the scope of an automatic coverage clause under the policy, the agent had "the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy." (*Id.* at p. 692.)

Thereafter the appellate court decided *Jones* v. *Grewe, supra*, 189 Cal.App.3d 950. The *Jones* court distinguished the decision in *Westrick* by noting the case before it did "not involve a failure . . . to explain any exclusions in the policy." (*Jones* v. *Grewe, supra*, 189 Cal.App.3d at p. 955.) Yet, in its discussion of *Westrick*, the *Jones* court acknowledged "*Westrick's* holding reiterates what California courts have recognized for some time, namely, that it is an insurer's duty to inform the insured of his rights and obligations under the policy, particularly when an insured's apparent lack of knowledge may result in a loss of benefits or a forfeiture of rights." (*Ibid.*)

The decision in *Free* v. *Republic Ins. Co.* (1992) 8 Cal.App.4th 1726 [11 Cal.Rptr.2d 296] explored one of the exceptions noted in *Jones* and held an agent has a duty to use reasonable care in responding to specific inquiries from his insured. (*Id.* at p. 1729.) In *Free* the insurer, through its agent, issued a homeowners policy to plaintiff in 1979. That year, and each year thereafter, plaintiff asked the agent whether the policy limits were adequate to rebuild his home if necessary. On each occasion the agent assured plaintiff the policy limits were adequate. After a fire destroyed his home, plaintiff learned for the first time the coverage provided by the policy was *not* adequate to replace his home. (*Ibid.*)

The *Free* court acknowledged neither an insurance agent nor an insurer is required under the general duty of care to advise regarding the sufficiency of liability limits or the replacement value of a residence. (*Free* v. *Republic Ins. Co., supra*, 8 Cal.App.4th at p. 1729.) However, the *Free* court held once an insurer or its agent elects to respond to an insured's questions about coverage, a special duty arises which requires them to use reasonable care to provide accurate information. (*Ibid.*) The *Free* court found the *Jones* decision distinguishable. (*Id.* at p. 1730.) It noted *Jones* involved a liability policy for

which the upper limit of desirable coverage cannot truly be known at the time of purchase. Whereas the type of insurance involved in the *Free* case involved the amount required to rebuild one's home, characterized by the court as a "specific eventuality" and one that is determinable. (*Ibid.*)

Significantly, the insurance policy in this case, as in *Free*, covers a "specific" eventuality, the loss of defined property with a quantifiable value, not personal injury to third parties for which liability may be open ended.

Similarly, in *Eddy* v. *Sharp* (1988) 199 Cal.App.3d 858 [245 Cal.Rptr. 211] the appellate court found an insurance broker had a special duty toward the insureds because he deliberately undertook responsibility for finding an insurance policy to specifically suit the insured's needs. "In this case Sharp's duty to the Eddys arose because Sharp undertook to prepare an insurance proposal for the Eddys to review prior to purchasing a policy of insurance. Sharp thus came under a duty of due care to accurately inform the Eddys of the policy's provisions. The cover letter described the coverage on the building as 'All Risk' except for perils on the exclusion list. The proposal also states that coverage is 'All Risk' subject to the exclusions listed. The exclusion list makes no reference to a loss caused by water backing up through sewers or drains nor does it contain a disclaimer that it is not a complete list of exclusions. . . ." (*Id.* at p. 866.)

The court reversed a summary judgment in favor of the broker finding it was a triable issue of material fact whether the broker negligently misrepresented the terms of the policy to the insured. (199 Cal.App.3d at p. 866.)

Also, in *Clement* v. *Smith* (1993) 16 Cal.App.4th 39 [19 Cal.Rptr.2d 676] the appellate court found the agent's misrepresentations concerning coverage under an insurance policy imposed a special duty on the agent and upheld a judgment in favor of the insured. In *Clement* the insured obtained contract liability insurance and was assured by his agent on two separate occasions the policy would provide adequate coverage in the event of litigation by a specific person. Ultimately, that person sued the insured for breach of contract. The insurer denied coverage under the policy which in fact only provided for personal injury and property damage. The court held that unless the insured had reason to believe otherwise, he could rely on his agent's representations without verifying them by reading the policy. "Absent some notice or warning, an insured should be able to rely on an agent's representations of coverage without independently verifying the accuracy of those representations by examining the relevant policy provisions. This is particularly true in view of the understandable reluctance of an insured to commence a study of the policy terms where even the courts have recognized

that few if any terms of an insurance policy can be clearly and completely understood by persons untrained in insurance law. [Citations.]" (*Id.* at p. 45.)

In a recent case, *Desai* v. *Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110 [55 Cal.Rptr.2d 276], review denied (Nov. 20, 1996), the court held an insurer may be liable for the negligence of its agent in securing appropriate insurance in facts similar to the case at bar. In *Desai* a homeowner requested insurance from his agent which would fully protect a home he purchased. The agent orally represented there would be 100 percent replacement cost coverage, "regardless of the policy limits." (*Id.* at p. 1115.) On that basis Desai purchased a policy effective November 4, 1991. Desai sustained damages in excess of $500,000 to his home from a fire on January 17, 1994, and from an earthquake on February 22, 1994. Farmers would only pay $158,734, as allegedly dictated by the terms of the policy. (*Ibid.*)

The *Desai* court factually distinguished the *Jones* line of cases noting, "[t]his is not a 'failure to recommend more coverage' case; it is a 'failure to deliver the agreed-upon coverage' case." (47 Cal.App.4th at p. 1119.) The court explained "Desai is suing because the insurer (through its agent) negligently represented that the policy in fact provided the 100 percent replacement cost coverage that Desai demanded from his insurance before he ever purchased the policy from Farmers." (*Ibid.*; see also Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 1995) ¶ 2:67, p. 2-13 [an insurance agent's misrepresentations to the insured concerning coverage may be chargeable to the insurance company]; *id.*, ¶ 11:240 p. 11-53 [representations made at the time a policy is issued may be the basis for later tort claims by the insured].)

There are several similarities between the factual situations of the foregoing decisions and the facts alleged in the case at bar. According to Peltier, Nacsa suggested the "replacement cost coverage endorsement" and negligently explained the endorsement's meaning and effect to mean the "replacement cost coverage" endorsement was sufficient to replace all lost or damaged personal property regardless of policy limits.

The insurers seek to distinguish these decisions finding a special duty by arguing they involve "affirmative representations" by the agent the policy would cover the insured's claims. However, according to Peltier, that is exactly what occurred. He claims Nacsa informed him that if Paper Savers purchased the "replacement cost coverage" endorsement all the equipment would be covered in the event of a total loss. In any event, an affirmative representation is not a prerequisite to create a special relationship with an insured. For example, *Westrick* did not involve an affirmative representation.

It was precisely the opposite, an omission by the agent. The *Westrick* court treated the omission as if the agent had provided incorrect information, stating, "We find no reason to distinguish between the misfeasance of giving erroneous information and the nonfeasance of giving no information at all." (*Westrick* v. *State Farm Ins.*, *supra*, 137 Cal.App.3d at p. 692.)

Next the insurers argue that unless the agent has been specifically requested to appraise the property, there can be no duty to ensure adequate coverage. They cite the decision in *Shultz Steel Co.* v. *Hartford Accident & Indemnity Co.*, *supra*, 187 Cal.App.3d 513 as authority for this proposition. In *Shultz* the plaintiff obtained commercial liability insurance in the amount of $500,000 from the broker it had used for over 20 years. (*Id.* at p. 518.) In 1980 Shultz's employee was electrocuted and severely injured. The employee sued and in 1986 obtained a judgment against Shultz in excess of $5 million. (*Id.* at p. 517.) In the meantime Shultz sued the broker and insurer for negligence and indemnification against any uninsured loss Shultz might (and did) incur. (*Ibid.*) Shultz argued the insurer had reviewed its insurance policies and had full knowledge the broker had recommended woefully inadequate insurance coverage. In addition, the insurer had visited the business premises and was aware of the safety conditions and risk of electrocution. Thus, Shultz argued the insurer knew better than anyone of the potential for a high jury verdict yet ratified the broker's negligent recommendations by accepting the premiums. The appellate court found these assertions inadequate to rebut the insurer's evidence it had no way of knowing whether Shultz carried additional or umbrella coverage with another insurer, or whether Shultz had not rejected suggestions to increase its coverage limits. (*Id.* at p. 524.)

The insurers' reliance on the *Shultz* decision is misplaced. *Shultz* does not hold, or even imply, the insurer's appraisal and inventory of a prospective insured's personal property is a necessary precondition for imposing liability on an insurer for its agent's alleged misrepresentations regarding the extent of coverage provided in a policy.

The insurers also claim it would be contrary to common sense and good public policy to impose on insurance agents the duty to ensure the adequacy of coverage limits and to ensure an insured understands the policy's terms. In support of its contention the insurers cite the decision in *Gibson* v. *Government Employees Ins. Co.*, *supra*, 162 Cal.App.3d 441. In *Gibson* the insureds had an insurance policy with defendant since 1959. In 1981, as pedestrians, they were struck by a car and injured. They collected from the driver of the car and from the driver's insurer, but their damages exceeded the amounts collected. The Gibsons maintained they should have been

advised by defendant as to the possibility of underinsured motorist coverage[5] and that their medical pay coverage was too low. (*Id.* at p. 447.) The court pointed out there were no facts alleged in the complaint that any representations were made by defendant with respect to coverages other than very general ones, such as the policy would "cover their needs." (*Id.* at p. 448.) The *Gibson* court reasoned there should be no duty to advise an insured of a particular coverage, or that such a coverage can be had from another carrier, because such a duty "would subject insurance carriers to liability for failing to advise their own insureds of an arguably better package of insurance offered by a competitor." (*Id.* at p. 451.)[6]

The public policy articulated in *Gibson* must be placed in its proper context. In *Gibson* there were no misrepresentations alleged, no misunderstandings alleged, and no alleged failure to provide complete information about how a particular coverage functioned. Instead, the Gibsons merely asserted their policy was inadequate to provide coverage for the incident which occurred.

The factual dispute in the case at bar is far different. Unlike the situation in *Gibson*, Paper Savers does not allege the insurance agent had a spontaneous and unsolicited duty to ensure adequate insurance coverage. Instead this case involves a special duty to ensure such coverage based on alleged affirmative assertions made to induce the insured to purchase the policy and additional endorsement. Specifically, Peltier alleges Nacsa made statements which led Peltier to believe the "replacement cost coverage" endorsement the agent recommended was adequate to replace all his equipment in the event of a total loss. This allegation takes the case out of the ordinary general duty of care and triggers a greater and special duty to the insured as a result of the insurance agent's alleged representations.

Alternatively, the insurers argue an insured is presumed to have read and understood his insurance policy, and, assuming the policy language is clear, an agent's misleading comments are irrelevant. In support of this proposition the insurers cite decisions dealing with alleged bad faith denial of coverage under the insurance contract or intentional fraud. For example, in *Hackethal v. National Casualty Co.* (1987) 189 Cal.App.3d 1102 [234 Cal.Rptr. 853] a doctor purchased an insurance policy called a "defendants' reimbursement policy" which provided payments for time the doctor spent in court defending a malpractice action. The Attorney General filed an accusation against

---

[5]Subsequent to the events in *Gibson* the Legislature passed Insurance Code section 11580.2 which mandated underinsured motorist coverage. The *Gibson* court took notice of this in a footnote. (*Gibson* v. *Government Employees Ins. Co., supra,* 162 Cal.App.3d at p. 451.)

[6]We need not comment on the merit of the court's conclusions because, clearly, *Gibson* is distinguishable from the instant case.

Hackethal, charging him with gross negligence, incompetence and criminal acts and sought to revoke his license to practice medicine. The doctor sought payment under the policy for the days he spent testifying before the medical review board. The insurer denied coverage and Hackethal sued for bad faith denial of coverage and for fraud. A jury found in favor of the doctor and the trial court granted the insurers' motion for judgment notwithstanding the verdict.

The appellate court found the policy language plain, clear and unambiguous. It held the clear policy language precluded payments under the policy for days the doctor spent in hearings before the medical review board. The court concluded that in the administrative hearing context the doctor was not a "defendant" and the proceeding was not an action for damages for medical malpractice. The court noted the policy and brochure repeatedly referred to the policy as a "defendants' reimbursement policy." The doctor had renewed the policy for nine years. Thus, the appellate court found that even if "he did rely on the statements of the [insurance] agent [when he purchased the policy nine years earlier] in forming such belief, and for that reason renewed the policy, his reliance was unjustifiable as a matter of law." (189 Cal.App.3d at p. 1111; see also *Hadland* v. *NN Investors Life Ins. Co.* (1994) 24 Cal.App.4th 1578 [30 Cal.Rptr.2d 88] [in fraud action plaintiffs' reliance on agent's comment coverage "was as good if not better" than their existing policy was unjustifiable as a matter of law because it directly and plainly conflicted with the clear language of the policy]; *Hallmark Ins. Co., Inc.* v. *Superior Court* (1988) 201 Cal.App.3d 1014 [247 Cal.Rptr. 638] [absent an ambiguity in the policy language the doctrine of reasonable expectation of coverage is inapplicable].)

However, these decisions are distinguishable. The instant case has nothing to do with the interpretation of insurance policy terms. No one is disputing the policy terms or their meaning. The dispute is whether Nacsa actively misled Peltier as to the effect of those terms.

The insurers also rely on the decision in *Clement* v. *Smith, supra,* 16 Cal.App.4th 39.[7] In *Clement* the insured obtained contractual liability insurance and was assured by his agent on two separate occasions the policy

---

[7] The decision in *Clement* involved allegations of negligent misrepresentation. Plaintiff raises the issue of negligent misrepresentation in its opening brief even though in its complaint negligent misrepresentation is not alleged as a separate cause of action. In a review of the record we find no reference to negligent misrepresentation until Paper Savers filed its opposition to the motion for summary judgment. There is no indication in the record Paper Savers requested leave to amend the complaint below for this purpose.

Inasmuch as we find grounds for reversal on the negligence cause of action, it is not necessary to discuss every contention the parties raise concerning a potential cause of action

would provide adequate coverage in the event of litigation by a specific person. Ultimately, that person sued the insured for breach of contract. The insurer denied coverage under the policy which only provided for personal injury and property damage. The court held that unless the insured had reason to believe otherwise, he could rely on his agent's representations without verifying them by reading the policy. (*Id.* at p. 45.)

The insurers emphasize the *Clement* court's statement, ". . . an insured cannot remain intentionally ignorant of the terms of his or her policy," (*Clement* v. *Smith, supra,* 16 Cal.App.4th at p. 45) suggesting again an insured has a duty to read his policy. Essentially, all the *Clement* court is saying is if an insured has "some notice or warning" his agent's representations are erroneous, he cannot purposely avoid corroborating that suspicion by not reading his policy. (*Ibid.*)

The insurers argue *Clement* would be on point if Peltier had read his policy and was unsure about what the endorsement in question meant, and then had called Nacsa to ask if it meant policy limits could be exceeded in a claim. This assertion misapplies the holding of *Clement* and highlights the *disputed* nature of the facts in this case.

The insurers also point to language in *Sarchett* v. *Blue Shield of California* (1987) 43 Cal.3d 1 [233 Cal.Rptr. 76, 729 P.2d 267], which suggests an insured is bound by "clear and conspicuous provisions under an insurance policy," even if the insured did not read or understand them. (*Id.* at pp. 14-15.) Here, again, when put in its proper context, their reliance on this decision is misplaced. In *Sarchett* the court found the arbitration and review provision was conspicuous but the insurer had reason to know the insured was uninformed of his rights because of the exchanges between them. (*Id.* at p. 15.) Therefore, if anything, this decision highlights the principle that language of a policy may *not* control because of an insurer's conduct extrinsic to the contract.

Finally, the insurers assert that Peltier's reliance upon Nacsa's alleged representations were "unjustifiable as a matter of law." (*Hadland* v. *NN Investors Life Ins. Co., supra,* 24 Cal.App.4th 1578; *Hackethal* v. *National Casualty Co., supra,* 189 Cal.App.3d at p. 1111.) These decisions acknowledge the question whether a person reasonably relied on another's representations is normally a question of fact, although in some instances it can be decided as a matter of law. (*Hadland* v. *NN Investors Life Ins. Co., supra,* 24

---

for negligent misrepresentation. On remand, Paper Savers may wish to request leave of the court to amend its complaint to add a cause of action for negligent misrepresentation for a full development of its case.

Cal.App.4th at p. 1586; *Blankenheim* v. *E. F. Hutton & Co.* (1990) 217 Cal.App.3d 1463, 1475 [266 Cal.Rptr. 593] ["Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact."].)

We do not agree with the insurers' contention the facts in the present case point unerringly to unreasonable reliance as a matter of law.[8] Essentially, the issue whether an insured has a duty to read his policy and whether in not reading his policy he is, nonetheless, bound by its terms, is a complex one and not one that can be stated baldly without an analysis of the surrounding facts. In the instant case the same disputed facts return to the forefront to dispose of this issue. If Nacsa held himself out as an adviser to Peltier and interpreted the coverage in a way different from what the language of the policy indicated, Peltier is simply saying that Nacsa may be liable for his negligence, if proved. In this, he is correct.

### IV. *The Summary Judgment Must Be Reversed Because There Remain Several Material Issues of Fact Which Warrant the Fact-finding Process of a Trial.*

As the decisions in *Westrick, Free, Eddy, Clement,* and *Desai* make clear, the extent of an insurance agent's duty depends on the nature of the interaction between the agent and the insured and the representations the agent made regarding coverage when discussing the policy. As noted, the parties give varying accounts of the factual circumstances surrounding the recommendation and purchase of the policy at issue in this case. We therefore conclude this case may not be appropriately resolved through a summary proceeding.

Throughout this opinion we have identified several key factual issues which remain unresolved. For example, there are triable issues of fact whether Nacsa misrepresented the meaning and effect of the "replacement cost coverage" endorsement. This factual question must be resolved to determine whether in making the representations he assumed a special duty toward Paper Savers to ensure it had adequate insurance coverage to in fact replace all the business's personal property in the event of a total loss, as he allegedly claimed. In addition, it is a factual question whether Peltier

---

[8]We respectfully disagree with the trial court's statements below in the hearing on the summary judgment motion that Peltier's understanding "defies logic" or was "simply not reasonable." We believe such a determination in the instant case belongs to the fact finder after testimony, including expert testimony if necessary, is presented. (See, e.g., *Clement* v. *Smith, supra,* 16 Cal.App.4th 39, 47; *Westrick* v. *State Farm Ins., supra,* 137 Cal.App.3d 685, 689.)

reasonably relied on Nacsa's alleged negligent representations regarding the coverage he recommended, and if so, whether Paper Savers was denied the coverage Peltier thought he had purchased.

Given the numerous factual matters on which this case turns, we conclude it was error for the trial court to grant the insurers' motions for summary judgment. (Code Civ. Proc., § 437c, subd. (c).)

## DISPOSITION

The judgment is reversed. Paper Savers to receive its costs on appeal.

Lillie, P. J., and Woods, J., concurred.

Respondents' petition for review by the Supreme Court was denied March 12, 1997.