Filed 3/15/13  Capelletti v. Infinity Ins. Co. CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CATHERINE CAPPELLETTI,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>INFINITY INSURANCE COMPANY,<br><br>Defendant and Respondent. | A134338<br><br>(Marin County Super. Ct.<br>No. CIV1101663) |

Plaintiff Catherine Cappelletti (appellant) appeals from the judgment entered following the trial court's order sustaining a demurrer filed by defendant Infinity Insurance Company (respondent).  Among other things, appellant contends the court erred because respondent was required to specifically draw her attention to a crime exclusion in a car insurance policy it issued to appellant.  We affirm.

## BACKGROUND[1]

In May 2010, appellant's parents, on her behalf, applied to respondent for an automobile insurance policy.  They applied over the internet using Incorporated Insurance Services, which acted both as respondent's agent and as appellant's "attorney-in-fact" in executing the insurance application (Application) on her behalf.

---

[1]   Because this is an appeal from the judgment entered following the trial court's order sustaining a demurrer, we assume the truth of the factual allegations in the operative complaint.  (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.)

1

The Application required the acknowledgment of various disclosures. Among other things, the Application stated, "**If this policy is a physical damage only policy I understand that**: [¶] 17. This policy WILL NOT SATISFY ANY FINANCIAL RESPONSIBILITY LAW, AND DOES NOT PROVIDE ANY LIABILITY INSURANCE and has no provision to indemnify loss sustained by third parties. [¶] 18. No coverage will be provided for any loss while my insured vehicle is being operated by someone who is using the vehicle in the commission of a crime, including driving under the influence of alcohol or a controlled substance." (Boldface in original.)

Respondent issued a policy (Policy) to appellant. By the terms of the Application, the Application became part of the Policy. The Policy was not a physical damage only policy; it provided liability coverage as well as coverage for damage to appellant's car. As relevant in the present case, the Policy excluded coverage for damage to appellant's car "[w]hile the insured auto is being used in the commission of a crime." (Boldface omitted.) The Policy defined "crime" as "any act, which under the laws of California, is a felony. Crime shall also include any attempt to elude law enforcement personnel and driving under the influence of alcohol or while intoxicated or under the use of any controlled substance." (Boldface omitted.)

In October 2010, appellant lost control of her car and struck a parked car. This resulted in damages exceeding the value of appellant's car. It is undisputed that, at the time of the accident, appellant was driving under the influence of alcohol, which was a misdemeanor.

Appellant made a claim to respondent for the damage to her car. Respondent denied the claim on the ground that driving under the influence of alcohol constituted a crime, as defined in the Policy.

Appellant filed the present action in April 2011. She filed an amended complaint after the trial court sustained with leave to amend respondent's demurrer to the original complaint. The amended complaint alleged causes of action for "Deceit/Negligent Misrepresentation," reformation, breach of contract, and breach of the covenant of good faith and fair dealing. Respondent filed another demurrer and the trial court sustained the

2

demurrer without leave to amend. Subsequently, the court entered judgment in favor of respondent. This appeal followed.

DISCUSSION

Appellant contends the trial court erred in sustaining respondent's demurrer. Her arguments primarily turn on her assertion that California case authority required respondent to specifically draw her attention to the allegedly "unusual" crime exclusion, in the Application or some other document other than the Policy itself. We disagree.

I. *Breach of Contract*

Where, as here, the material facts are not in dispute, interpretation of an insurance policy presents solely a question of law. (*Haynes v. Farmers Ins. Exchange* (2004) 32 Cal.4th 1198, 1204 (*Haynes*); accord, *Dominguez v. Financial Indemnity Co.* (2010) 183 Cal.App.4th 388, 395 (*Dominguez*).) " ' "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." ' [Citation.] Accordingly, in interpreting an insurance policy, we seek to discern the mutual intention of the parties and, where possible, to infer this intent from the terms of the policy. [Citations.] When interpreting a policy provision, we give its words their ordinary and popular sense except where they are used by the parties in a technical or other special sense. [Citation.]" (*Haynes*, at p. 1204; see also *Dominguez*, at pp. 395-396.) " 'The policy should be read as a layman would read it and not as it might be analyzed by an attorney or an insurance expert. [Citation.]' [Citation.]" (*Dominguez*, at p. 396.) " ' "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." [Citation.]' " (*Ibid.*)

Appellant relies upon the "fundamental principle," as described in *Haynes*, " 'that an insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. As we have declared time and again "any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect." ' [Citation.] . . . But to be enforceable, any provision that takes away or limits coverage reasonably expected by an insured must be 'conspicuous, plain and clear.' [Citation.] Thus, any such limitation must be placed and printed so that it will attract the

3

reader's attention. Such a provision also must be stated precisely and understandably, in words that are part of the working vocabulary of the average layperson. [Citations.] The burden of making coverage exceptions and limitations conspicuous, plain and clear rests with the insurer. [Citations.]" (*Haynes*, *supra*, 32 Cal.4th at p. 1204; see also *Hervey v. Mercury Casualty Co.* (2010) 185 Cal.App.4th 954, 966 [" 'To be enforceable, a policy provision limiting coverage otherwise reasonably expected under the policy must be so drafted that a reasonable purchaser of insurance would have both noticed it and understood it.' [Citation.]"].)

Appellant contends that, under *Haynes*, respondent was required to "specifically draw[]" the crime exclusion to appellant's attention because the exclusion is "an unusual limitation on coverage."[2] In *Haynes*, the Supreme Court held that an insurer was not entitled to summary judgment in a declaratory relief action. There, an endorsement in a car insurance policy limited permissive user coverage to a minimal amount. The court concluded the limitation in the endorsement did not control over the larger amounts of coverage listed on a declarations page, because the limitation was not sufficiently clear, plain, and conspicuous. (*Haynes*, *supra*, 32 Cal.4th at pp. 1202-1205.) Appellant points to a portion of *Haynes* in which the Supreme Court recognized authority that " 'an insured has a duty to read his [or her] policy' " but emphasized, "the duty to read 'is insufficient to bind a party to unusual or unfair language unless it is brought to the attention of the party and explained.' [Citation.]" (*Id.* at p. 1210.) The court continued, "[f]or nearly a hundred years we have recognized that ' "the rule [presuming parties are familiar with contract terms] should not be strictly applied to insurance policies. It is a matter almost of common knowledge that a very small percentage of policy-holders are actually cognizant of the provisions of their policies . . . . The insured usually confides implicitly in the agent securing the insurance, and it is only just and equitable that the company should be required to call specifically to the attention of the policy-holder such provisions as the one before us." ' [Citation.] Thus, an insurer's direction to the

---

[2] We assume for the purposes of this appeal that the crime exclusion was an unusual exclusion.

4

subscriber to read the entire policy 'is not a substitute for notice to the subscriber of a loss of benefit.' [Citation.]" (*Haynes*, at pp. 1210-1211.)

To the extent appellant contends *Haynes* required respondent to draw her attention to the crime exclusion in the Application or some other document other than the Policy itself, we disagree. The decision does not create a bright-line rule that unusual provisions must be specifically drawn to the attention of the insured outside the language of the policy. Instead, the touchstone in *Haynes* is the fundamental principle that exclusions contrary to the insured's reasonable expectations must be " 'conspicuous, plain and clear.' " (*Haynes*, *supra*, 32 Cal.4th at p. 1204; see also *id.* at p. 1210 [referring to the "general requirement . . . a that coverage reduction . . . must be conspicuous"].) Although the declarations page in *Haynes* failed to alert the insured to the limitation in coverage for permissive users, that failure did not *by itself* render the provision unenforceable. (*Haynes*, at p. 1206.) The Supreme Court stated, "no reason appears why the actual dollar coverages for permissive users could not have been placed with the policy coverages on the declarations page, where one would expect an insured to look to determine the policy limits," but it also clarified, "[t]he deficiencies in [the insured's] approach do not, however, depend on the lack of such placement per se." (*Ibid.*) The court then proceeded to detail several problems with the particular placement of the provision *within* the policy, including, for example, that the text of the provision was not highlighted, the provision was surrounded by other provisions unrelated to exclusions or limitations on coverage, the title "PERMISSIVE USER" was unhelpful because the term was not defined, and an earlier definition of "insured" suggested permissive drivers would be covered equally. (*Id.* at pp. 1207-1208.) Based on those and other considerations, the Supreme Court concluded the provision was " 'hid[den] . . . in an inconspicuous portion of the policy.' " (*Id.* at p. 1211.) Furthermore, the failure to define the term "permissive user," cross-references to other insurance policies, and the need for the insurer to insert the permissive user language in other portions of the policy led the Supreme Court to conclude the provision was not plain and clear. (*Id.* at pp. 1211-1212.)

5

In a footnote, *Haynes* made clear it was not suggesting the insurer "necessarily must correct all of the identified deficiencies in order to render a permissive user limitation enforceable in future cases. . . . There may be a number of ways for [the insurer] to correct the problem." (*Haynes*, *supra*, 32 Cal.4th at p. 1212, fn. 9.) As we understand *Haynes*, an "unusual" exclusion is enforceable if, viewing the policy as a whole, the provision is conspicuous and clear. This was the conclusion reached in *Mission Viejo Emergency Medical Associates v. Beta Healthcare Group* (2011) 197 Cal.App.4th 1146 (*Mission Viejo*), which considered a challenge to an arbitration provision. The court stated, "even if we assume that an arbitration provision does qualify as unusual or unfair language, it is enforceable if it is 'conspicuous, plain and clear' in the policy itself. [Citation.] [*Haynes*] does not hold that disclosure outside the policy is required." (*Mission Viejo*, at p. 1157.)

Proceeding to an analysis of the challenged provision in the present case, an exclusion is conspicuous when it is " 'positioned and printed in a form which adequately attracts the reader's attention to the limitation.' " (*Mission Viejo, supra,* 197 Cal.App.4th at p. 1154.) Appellant does not argue that the crime exclusion was inconspicuous; any such contention has been forfeited. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 (*Badie*).)

A policy exclusion is plain and clear when " 'couched in words which are part of the working vocabulary of average lay persons.' " (*Jauregui v. Mid-Century Ins. Co.* (1991) 1 Cal.App.4th 1544, 1550.) " 'This means more than the traditional requirement that contract terms be "unambiguous." Precision is not enough. Understandability is also required. To be effective in this context, the exclusion must be couched in words which are part of the working vocabulary of average lay persons.' [Citations.]" (*Ibid.*; accord, *Haynes*, *supra*, 32 Cal.4th at p. 1211.) As noted previously, the Policy defines "crime" as "any act, which under the laws of California, is a felony. Crime shall also include any attempt to elude law enforcement personnel and driving under the influence of alcohol or while intoxicated or under the use of any controlled substance."

6

Appellant argues the definition is not clear because it can be read to apply only where the insured *both* eludes law enforcement and drives under the influence *at the same time*. We reject that contention, both as it relates to appellant's argument in support of her construction of the policy and as it relates to appellant's argument that the exclusion is not plain and clear. Although we interpret ambiguities in favor of the insured, we do not consider the exclusion to be ambiguous unless it is susceptible to two *reasonable* constructions. (*Dominguez, supra*, 183 Cal.App.4th at p. 396; see also *Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 807 ["Words used in an insurance policy are to be interpreted according to the plain meaning which a layman would ordinarily attach to them," and we must "not adopt a strained or absurd interpretation" of the policy language].) Appellant's construction of the exclusion is not reasonable. As respondent points out, appellant's construction would make sense if the exclusion referred to evading the police *while* under the influence of drugs or alcohol. Regardless of whether her construction is "semantically permissible", a reasonable layperson would not understand the exclusion to apply only where the insured is *both* intoxicated and evading the police. (See *Nissel v. Certain Underwriters at Lloyd's of London* (1998) 62 Cal.App.4th 1103, 1111-1112 [semantically permissible construction must, in context, be "objectively reasonable"].) As the trial court reasoned, "Both acts are illegal, and highly dangerous to [the insured] and to others, and are voluntary and deliberate. To conclude that a reasonable insured would expect [to lose] coverage only in the rare instance that these illegal activities occur simultaneously defies common sense." "Courts will not strain to create an ambiguity where none exists. [Citation.]" (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18-19.)

We conclude the trial court properly sustained respondent's demurrer to appellant's cause of action for breach of contract.[3] The crime exclusion unambiguously

---

[3] The other cases principally relied upon by appellant are distinguishable. ~(See AOB 12-16; ARB 5)~ In *Steven v. Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 866, 869-871, 883, an airplane trip insurance policy did not plainly or clearly provide for noncoverage where mechanical problems required alternate travel arrangements. In

excluded coverage in the circumstances of the present case. And, because the crime exclusion was conspicuous, plain, and clear in the Policy, respondent was not obligated to separately draw appellant's attention to it for it to be enforceable.[4]

II. *Deceit and Negligent Misrepresentation Claim*

The elements that give rise to a tort action for deceit are: " '(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e. to induce reliance; (d) justifiable reliance; and (e) resulting damage.' [Citations.]" (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638; accord, *Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1255 (*Conroy*).) "The tort of negligent misrepresentation, a species of the tort of deceit [citation], does not require intent to defraud but only the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true. [Citation.]" (*Conroy*, at p. 1255.)

Appellant appears to contend her complaint states claims for deceit and negligent misrepresentation simply because respondent failed to disclose the crime exclusion in the Application. She relies on *Pastoria v. Nationwide Ins.* (2003) 112 Cal.App.4th 1490, which concluded the trial court had erred in sustaining a demurrer because, assuming the plaintiffs' allegations were true, the defendant insurer had a statutory duty to disclose information about impending policy amendments before the plaintiffs bought the policies. Violation of that statutory duty was the basis for the plaintiffs' fraud claim. (*Id.*

---

*Logan v. John Hancock Mut. Life Ins. Co.* (1974) 41 Cal.App.3d 988, 990-991, 996, the contested exclusions in a life insurance policy were never communicated to the decedent, because he died before he received the policy. Similarly, in *Jones v. Crown Life Ins. Co.* (1978) 86 Cal.App.3d 630, 635, 640, an employee who signed up for life insurance through his employer was not given a copy of the policy.

[4] This result is not altered by the fact that the Application required appellant to acknowledge that a crime exclusion applies to "physical damage only" policies. As explained below (see, *post*, pp. 11-12), appellant could not have reasonably relied on that disclosure to mean that her Policy did *not* include such an exclusion, and the conspicuous and clear language of the Policy was sufficient to make the exclusion enforceable. (See *Haynes*, *supra*, 32 Cal.4th at pp. 1213, 1215.)

8

at p. 1499.)  In the present case, accepting as true the facts as alleged in the complaint, appellant has not shown that respondent was obligated to disclose the crime exclusion in the Application or another document outside the Policy.  As explained previously, *Haynes* did not obligate respondent to make that disclosure, and appellant has not shown any statute required the disclosure.  Appellant does reference Insurance Code section 332, which provides, "Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining."  However, she fails to provide reasoned argument or citations to authority why that statute obligated respondent to disclose the crime exclusion outside the Policy itself; the argument has been forfeited.  (*Badie, supra,* 67 Cal.App.4th at pp. 784-785; see also *Levine v. Blue Shield of California* (2010) 189 Cal.App.4th 1117, 1134 [in reference to Insurance Code section 332, pointing out the plaintiff's failure to cite supportive case authority and stating "We are loathe to interpret a long-existing statute that does not expressly require such a disclosure in a manner that would impose a broad new duty that is in derogation of the common law."].)

Appellant also cites *California Service Station etc. Assn. v. American Home Assurance Co.* (1998) 62 Cal.App.4th 1166, 1174, for the proposition that an insurer has a duty to disclose information when its agent "misrepresents the nature, extent or scope of the coverage being offered or provided."  She also references Civil Code section 1710, subdivision (3), which provides that deceit includes "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact."  Although appellant's brief is not entirely clear, we understand her to argue that the Application misrepresented the scope of the coverage because it required the applicant to acknowledge that a crime exclusion would be applicable to "a physical damage only policy."  In particular, the Application required the applicant to acknowledge that, "[i]f this policy is a physical damage only policy" (boldface omitted), the policy would not indemnify any loss sustained by third parties and "[n]o coverage will be provided for any loss while my insured vehicle is

9

being operated by someone who is using the vehicle in the commission of a crime, including driving under the influence of alcohol or a controlled substance." We understand appellant to argue the Application misled her into believing that, because her Policy was *not* only for physical damage, a crime exclusion would not be part of her Policy.

On the other hand, respondent cites *Hackethal v. National Casualty Co.* (1987) 189 Cal.App.3d 1102 (*Hackethal*), in support of its argument that the conspicuous and clear disclosure of the crime exclusion in the Policy precludes appellant's deceit and negligent misrepresentation claims, regardless of any alleged misrepresentations in the Application. In *Hackethal*, the plaintiff alleged an insurance agent misrepresented the scope of coverage under a policy. (*Id.* at p. 1111.) The court affirmed a directed verdict in favor of the defendant insurer, concluding that any reliance on the agent's statement was "*unjustifiable* as a matter of law" because the plaintiff had a duty to read the policy, which made clear there was no coverage for the claim at issue. (*Id.* at pp. 1111-1112.) *Hackethal* quoted *Aetna Casualty & Surety Co. v. Richmond* (1977) 76 Cal.App.3d 645, 652, for the proposition, " ' "It is a general rule that the receipt of a policy and its acceptance by the insured without an objection binds the insured as well as the insurer and *he cannot thereafter complain that he did not read it or know its terms*. It is a duty of the insured to read his policy." ' [Citations.]" (See *Hackethal*, at p. 1112.) Similarly, respondent cites *Hadland v. NN Investors Life Ins. Co.* (1994) 24 Cal.App.4th 1578 (*Hadland*), which followed *Hackethal*. There, an agent allegedly told the plaintiffs that a health insurance policy was " 'as good if not better' " than their old policy; in fact, the policy did not cover certain medical bills that plaintiffs thought would be covered. (*Id.* at p. 1581.) *Hadland* concluded the trial court properly granted the defendants's motion for nonsuit, stating that plaintiffs, "having failed to read the policy and having accepted it without objection, cannot be heard to complain it was not what they expected. Their reliance on representations about what they were getting for their money was unjustified as a matter of law." (*Id.* at p. 1589, fn. omitted.)

10

Other California decisions, which appear to be in some tension with *Hackethal* and *Hadland*, have concluded that clear language in insurance policies did not preclude claims based on misrepresentations made by insurance agents. (See, e.g., *Clement v. Smith* (1993) 16 Cal.App.4th 39, 45 ["Absent some notice or warning, an insured should be able to rely on an agent's representations of coverage without independently verifying the accuracy of those representations by examining the relevant policy provisions."]; see also, e.g., *Butcher v. Truck Ins. Exchange* (2000) 77 Cal.App.4th 1442, 1463 [insured asked agent to duplicate his coverage and agent allegedly misled the insured into believing he had done so]; *Paper Savers, Inc. v. Nacsa* (1996) 51 Cal.App.4th 1090, 1101 [agent had duty to ensure adequate coverage "based on alleged affirmative assertions made to induce the insured to purchase the policy and additional endorsement"].)

We need not resolve in the present case the apparent tension between the lines of authority described above. Assuming that a deceit or negligent misrepresentation claim may be based on a misrepresentation contradicted by clear policy language, appellant has not alleged any misrepresentation upon which she could justifiably rely. " '[W]hether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts.' [Citation.]" (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239; see also *Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1067 ["The complaint must contain 'allegations of facts showing that the actual inducement of [the] plaintiffs . . . was justifiable or reasonable. [Citations.]' [Citation.]"].) In this case, the Application does not purport to list all the exclusions applicable to appellant's Policy, and, in particular, it makes no representations about coverage for losses incurred during the commission of a crime. Rather, the Application makes two representations regarding a type of policy that Appellant was *not* applying for—specifically, that a physical damage only policy would not indemnify losses sustained by third parties or provide coverage for losses sustained during the commission of a crime. Although those disclosures might reasonably have led appellant to wonder whether and to what extent such coverage would exist under her Policy, it would not, as a matter of law, have been reasonable for appellant to make an indirect inference from

11

those disclosures that *no* crime exclusion existed under her Policy and to *rely* on that inference as a description of her coverage under the Policy. Appellant provides no authority to the contrary. The cases she does cite are distinguishable, because they involve direct and specific false representations about coverage. (*Clement v. Smith*, *supra*, 16 Cal.App.4th at p. 45; *Butcher v. Truck Ins. Exchange*, *supra*, 77 Cal.App.4th at p. 1463; *Paper Savers, Inc. v. Nacsa*, *supra*, 51 Cal.App.4th at p. 1101.)

Accordingly, the trial court properly sustained the demurrer as to the deceit/negligent misrepresentation cause of action.

## III. *Reformation Claim*

Appellant acknowledges that her request for reformation of the Policy is a remedy for respondent's alleged deceit. (See Civ. Code, § 3399; *Everett v. State Farm General Ins. Co.* (2008) 162 Cal.App.4th 649, 664.) Because the trial court properly sustained the demurrer as to her deceit claim, it also properly sustained the demurrer as to her reformation claim.

## IV. *Breach of Covenant of Good Faith and Fair Dealing*

Appellant acknowledges that her claim for breach of the covenant of good faith and fair dealing depends on her contentions that the crime exclusion is unenforceable and that respondent committed fraud. Because the trial court properly sustained the demurrer as to the breach of contract and deceit causes of action, it also properly sustained the demurrer as to her bad faith claim.

## DISPOSITION

The trial court's judgment is affirmed. Costs on appeal are awarded to respondent.

_____
SIMONS, J.

We concur.


_____
JONES, P.J.


_____
BRUINIERS, J.