Filed 12/12/13  Castro v. Civil Service Board CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| VICTOR CASTRO, | C068323 |
| Plaintiff and Respondent, | (Super. Ct. No. 34200880000071CUWMGDS) |
| v. | |
| CIVIL SERVICE BOARD, | |
| Defendant; | |
| CITY OF SACRAMENTO, | |
| Real Party in Interest and Appellant. | |

The City of Sacramento (the City) appeals from a judgment granting Victor Castro's petition for writ of administrative mandate.  Castro was fired from his job with the City for assaulting his supervisor, Jackie Santoyo.  The City's Administrative Policy Instruction No. 44 (workplace violence policy) provides:  "The City will not tolerate violent behavior or threats in the workplace.  Any violent behavior related to the employee's work or work relationships, whether an employee is on or off duty, on or off City property or City workplaces, is prohibited.  Violations of this policy will be

1

investigated, and if substantiated, the City will take disciplinary action up to and including termination."**1**

Pursuant to the collective bargaining agreement, Castro's disciplinary grievance was heard by an arbitrator, who found the assault occurred, but that Castro did not intend to harm Santoyo. The arbitrator concluded Castro "was not discharged for just cause" and found "the appropriate discipline to be a suspension for thirty working days." The Board adopted the arbitrator's factual recitation, but rejected the proposed reduction in penalty, finding "good cause for termination." The Board accepted the City's argument that the arbitrator improperly reduced the penalty from termination to a 30-day suspension based on the erroneous belief that "intent [was] an element that had to be proven" by the City.

As mentioned, Castro's petition for writ of administrative mandate was granted. The trial court concluded the Board's decision amounted to an abuse of discretion, explaining: "Had the Board based its decision on the actual factual circumstances of the matter before it or other proper ground(s), its determination arguably would have fallen within its discretion. Instead, however, the Board's rejection of the Arbitrator's proposed reduced penalty is premised on an erroneous interpretation of the City's Workplace Violence Policy as being one of 'zero tolerance.' The Board's conclusion that the Arbitrator was 'wrong as a matter of law' in considering [Castro's] intent when he [assaulted] his supervisor is undermined by the policy itself. Clearly, the plain language of the City's policy allows for progressive discipline 'up to and including termination,' thereby allowing for the consideration of mitigating factors such as the intent of the allegedly offending employee. The Board therefore abused its discretion in rejecting the

---

**1** The City has moved to augment the record on appeal to include a portion of the administrative record, specifically its Workplace Violence Policy, rule 12 of the Rules and Regulations of the Civil Service Board (the Board), and relevant portions of the collective bargaining agreement. We grant the motion. Undesignated rule references are to the Rules and Regulations of the Board.

Arbitrator's decision." The trial court remanded the matter to the Board for reconsideration.

The City appeals. Acknowledging the City's workplace violence policy contemplates a range of discipline "up to and including termination," and "mitigating factors such as degree of harm, aggressor's intent, [and] contrition" may be considered by the Board in determining the appropriate discipline to be imposed, the City argues there is no substantial evidence to support the trial court's conclusion that "the Board's decision rested on an erroneous and unsupported interpretation of [that policy] which demanded the imposition of termination in all instances of workplace violence." While we agree the Board appeared to understand there to be a range of discipline that could be imposed for violations of the City's workplace violence policy, we nevertheless conclude the Board abused its discretion by declining to consider Castro's intent when it rejected the arbitrator's proposed reduction in penalty and found good cause for termination. Accordingly, we affirm the judgment granting Castro's petition for writ of administrative mandate and remanding the matter to the Board for reconsideration.

BACKGROUND    Due to the multiple levels of review in this disciplinary matter, in order to place the trial court's decision in its proper context, we provide a detailed recitation of the facts surrounding the City's decision to terminate Castro, the arbitrator's proposed decision, the hearing and decision of the Board, and the writ proceedings before the trial court. We take the facts from the arbitrator's proposed decision.[2] As mentioned, the Board adopted the arbitrator's recitation of facts. There is no assertion on appeal that the facts found by the arbitrator are not supported by the weight of the evidence.

*Termination of Castro's Employment*

In October 2006, Castro was employed by the City as a tree maintenance worker. For the six weeks prior to the incident that led to his termination, Castro worked with

---

**2**    We have not been provided with the transcript of the hearing held before the arbitrator.

Andrew Vicente on a two-person team. The morning of the incident, Castro discovered Santoyo had removed Vicente from Castro's team and replaced him with Norma Cornejo, who had just returned to work following an injury. Castro entered Santoyo's office to discuss the reassignment. Santoyo was sitting at her desk looking into a filing cabinet while talking to another tree maintenance worker, Keith Griffith. According to Santoyo, Castro "came up on her left side and grabbed her very hard at her neck and said, 'What the fuck.' " Santoyo believed Castro was "angry" by "the tone of his voice." She "put up her hand and her head came up and she said something to the effect of, 'Don't start Victor.' " Castro then walked out of the office. About 20 minutes later, Castro returned to the office and asked Santoyo about Cornejo's work restrictions. Santoyo replied that Cornejo could do anything Castro could do. At this point, Castro seemed "irritated." Santoyo elaborated: "Not upset, but he was like bummed that he had to work with [Cornejo] instead of Vicente who he had been working with."

Griffith confirmed Castro "walk[ed] in behind Santoyo and grab[bed] her by the back of the head or the neck." When asked whether he believed Castro " 'was angry or doing horseplay,' " Griffith responded: " 'I wouldn't say it was playing. I don't know, it was like getting her attention. I don't know. I guess that's the reason he done it, I'm not sure.' " Griffith also stated that " 'it did not seem like horseplay' " and Castro " 'might have been a little upset.' " According to Griffith, when Castro grabbed Santoyo, he asked, " '[W]hy did you take [Vicente] off my crew?' " He confirmed Santoyo responded with something like, " 'Don't even start with me Victor.' " The arbitrator found Griffith to be "entirely credible."

According to Castro's account of the incident, he walked up to Santoyo as she sat at her desk looking into the filing cabinet, "reached out with his right hand and touched the top of her chair ([h]e demonstrated a hard slap on the back of her chair at the hearing) and reached out to get her attention and basically said, 'Hey, what's up? You took [Vicente] off the crew.' " Castro stated: " 'As I was reaching out towards her, she, I

4

assumed she got surprised, because she jerked back into me and I made contact with her shoulder or whatever. I can't be exact, because it was literally like a two second incident. She had moved back into me. She turned around, about half way around, not completely and she just said, ["]Victor, don't start. Don't even go there.["] ' " At this point, Castro "just kind of laughed" and "casually walked out of the room." Castro then confirmed he returned to the office later to ask about Cornejo's restrictions. Santoyo responded: " 'Oh, whatever you can do, she can do.' "

The following day, Griffith asked Santoyo how her neck was doing. Santoyo responded that she was okay. The same day, Santoyo and Castro exchanged friendly banter concerning a football game between the Oakland Raiders and the San Francisco 49ers. After work, Santoyo and Castro attended a Sacramento Municipal Utility District (SMUD) class and agreed to share notes with each other so they would be able to pass an upcoming horticulture test. Their interactions were friendly during the next several days and Santoyo never brought up the assault. Santoyo explained she did not immediately report the incident because she believed "the injury would resolve itself on its own." However, seven days after the incident, Santoyo decided to see a doctor because the pain "kept getting worse." She went to Joseph Benassini, the Urban Forest Services Manager, explained she needed to see a doctor and told him about the incident. She also filled out the City's "report of industrial injury claim form" and described the incident on the form. Benassini placed Castro on administrative leave and set up a meeting with the threat assessment team. The City's labor relations division then hired Dan Torres, a former police officer, to take statements from various employees, including Santoyo, Castro, and Griffith.

In December 2006, Castro received a letter informing him of the City's intent to terminate his employment. A *Skelly* hearing (see *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194) was held in January 2007. Following the hearing, Castro's employment was terminated.

5

Castro appealed his termination. As mentioned, pursuant to the collective bargaining agreement, the matter was heard by an arbitrator. On May 15, 2008, following a two-day evidentiary hearing, the arbitrator issued a proposed decision concluding Castro "was not discharged for just cause."

The arbitrator explained: " 'Just cause,' consists of a number of substantive and procedural elements. Primary among its substantive elements is the existence of sufficient proof that the employee engaged in the conduct for which he was discharged. Other elements include a requirement that an employee know or reasonably [should] be expected to know ahead of time that engaging in a particular type of behavior will likely result in discipline or discharge, the existence of a reasonable relationship between an employee's misconduct and the punishment imposed, and a requirement that discipline be administered even handedly, that is, that similarly situated employees be treated similarly and [disparate] treatment be avoided." Finding Castro violated the City's workplace violence policy, based on the facts recounted above, the arbitrator turned to the "second part of the just cause analysis," i.e., "whether the discipline imposed [was] appropriate under the circumstances." On this issue, the arbitrator explained: "[The workplace violence policy] states that the City will take disciplinary action up to and including termination. I presume that this requires the decision maker, with respect to termination, to take into the consideration the intent of the [discharged employee] when he performed the acts in question and other mitigating circumstances that were involved in the incident. My responsibility is to make a determination of whether the discharge was appropriate and just."

The arbitrator found discharge was not appropriate and just under the circumstances, explaining: "I do not believe that the [City] has established that [Castro's] intent was to maliciously and violently attack Santoyo. The actions which I have attributed to him are more consistent with an upset employee, who had lost his partner

6

without being talked to by the supervisor, who made the decision, and who was attempting to vehemently get his supervisor's attention. He did not have the right to lay his hand on his supervisor and in doing that he was wrong but I cannot find that his intent was to violently attack [Santoyo]. If his intent was to perform an act of violence on his supervisor, he was acting contrary to his seventeen years without any discipline problems except for [one incident in 1997 involving the failure to follow instructions and the use of profanity]." The arbitrator continued: "There has been no probative evidence presented which substantiates an allegation that [Castro] was violent or hostile towards women in the workplace. Further, if he was acting with violent intent, he was doing it toward someone with whom he had a friendly relationship. This conclusion is based upon the unrefuted description of Santoyo's bantering about the 49ers and the Raiders with [Castro] the day after the incident. Further, they attended the [SMUD] class together and then agreed to work together, studying for the subsequent examination. The nature of this relationship[,] which is not refuted by [Santoyo,] does not provide a basis for me to conclude that [Castro] intended to be violent toward his long term acquaintance, [Santoyo]." The arbitrator also pointed out that "[i]f there was intent to harm Santoyo, [Castro] would not have performed that action in the presence of another employee."

The arbitrator concluded Castro's "proven conduct [did] not warrant his discharge. Rather, under the concept of just cause[, Castro] should have been subjected to a lesser form of discipline. The City in its Administrative Policy Instructions contemplates discipline for work place violence up to and including discharge. This policy does allow for progressive discipline in a factual situation such as this case." The arbitrator found "the appropriate discipline to be a suspension for thirty working days."

### *Review by the Board*

Under the rules of the Board, the arbitrator's proposed decision became a "joint recommendation of the parties," which could be adopted, modified, or rejected by the Board. (See Rule 12.10(a), (d).) On July 1, 2008, the Board adopted the arbitrator's

7

factual findings, but rejected the proposed reduction in penalty, finding "good cause for termination."

At the hearing before the Board, the City's attorney argued that "the arbitrator added an additional element of proof to the [C]ity's burden" by "requir[ing] the [C]ity to prove intent, which is not required, and on that basis . . . greatly exceeded his powers." In response, Castro's attorney argued: "It seems to me that intent is always relevant. If two employees are standing next to each other and one bumps into the other one accidentally, does that warrant a termination? That goes to the essence of this case." One of the four Board members asked: "Where is that intent element included in either the administrative policy memo or the contract? Where is the grievous intent included as an element?" Castro's attorney answered that he did not know and went on to argue: "If I were to come in front of you with an argument to overturn a decision favorable to the [C]ity asking you to reconsider the decision because of a judgment that was exercised in the decision-maker's reasoning process, I wouldn't feel very strong." Another Board member responded: "I am understanding it differently, that the arbitrator considered intent an element that had to be proven and because intent wasn't proven that he didn't find, he didn't uphold the discharge. And my understanding of the [City's position] is that they're saying the burden of proof does not require any proof of intent."

The City's attorney then clarified: "[The workplace violence policy] states that the [C]ity will not tolerate violent behavior and that any violent behavior related to the employee's work or work relationships is prohibited, and any such conduct may be disciplined up to and including termination. Nowhere in that [policy] does it say that the intent of the aggressor must be proven by the [C]ity." Counsel continued: "The arbitrator took it upon himself to expand that burden; the arbitrator acknowledged that [Castro] put his hands on [Santoyo]. . . . [T]he arbitrator noted . . . the language of the [workplace violence policy] and then said, 'I presume that this requires the decision

8

maker with respect to the termination, [*to take into the consideration*][3] the intent of the grievant.' That was the arbitrator's presumption; that requirement is nowhere in the burden or the rules that the [C]ity is obligated to prove. The arbitrator noted that the touching of [Santoyo] occurred and that was unacceptable, but because the arbitrator believed, presumed that it was the [C]ity's burden to also prove that [Castro] also touched her with malice and it was a violent attack, he felt that the [C]ity had not met that burden and had not proven that [Castro] acted so violently and on that ground that directed his decision[,] which was to return [Castro] to work." (Omitted language shown in italics within brackets.)

Castro's attorney argued in rebuttal: "Obviously, I disagree with the [C]ity's argument. I also think it mischaracterizes the record. At the end of a two-day arbitration, the arbitrator very clearly asked both parties if they agreed with his statement of the issues to be resolved, and my recollection is 'whether or not [Castro's] termination was lawful.' That was the issue that we addressed; that was the issue that the record reflects. There is nothing in the record, to my recollection, that the [C]ity object[ed] to any evidence that was relevant to the question of intent. There were a number of witnesses [who] were questioned on that point. There was evidence introduced by me as to what was the nature of the general work environment at the time [to which] the [C]ity objected on the grounds that it was irrelevant but was overruled. There was nothing said by the [C]ity at the end of the proceeding of the relevance of the intent question." Castro's attorney requested that the Board adopt the arbitrator's decision in its entirety.

---

**3**      This quote from the arbitrator's decision omits important language. As mentioned, the arbitrator stated: "I presume that [the workplace violence policy] requires the decision maker, with respect to termination, *to take into the consideration* the intent of the [discharged employee] when he performed the acts in question and other mitigating circumstances that were involved in the incident." (Omitted language in italics.)

At this point in the hearing, one of the Board members stated: "In the years that I've been on the Board and since the time that the [City has] adopted this jointly proposed arbitration rule, I don't recall an instance where we ever did not accept the joint decision ― the jointly proposed decision. This one, however, is [a] very, very tough one. I think it's wrong as a matter of law; I think it's wrong as a matter of policy. I think the arbitrator has completely invaded the managerial discretion of the [C]ity. In my mind, the only real question is what is the appropriate remedy ― termination or something less." Another Board member stated: "Well, I am bothered that [the arbitrator] has inserted this additional burden of proof that is not present in law, and I think that management can be challenged and deserves to be challenged. I am not that hung up on that, but I think the whole idea of ending workplace violence is not to get into the whole intent thing, and he added that. And that's the whole basis for reducing the discharge to a 30-day suspension, and I disagree that he added the intent as a part of the burden of proof, and it's not there. And that's what's bothering me. As a matter of law, he's wrong. He set it up wrong." A third Board member agreed with the foregoing statement and added that the arbitrator's decision was "very disconcerting." The first Board member also "completely disagree[d] with the addition of the intent element in the [arbitrator's] decision."

The Board voted unanimously to reject the arbitrator's reduction in penalty, approve the penalty imposed by the City, i.e., termination, and adopt the balance of the arbitrator's decision. The Board also redacted certain confidential medical information contained in the arbitrator's decision.

### Petition for Writ of Administrative Mandate

On October 10, 2008, Castro filed a petition for writ of administrative mandate in the trial court seeking an order directing the Board to set aside its decision terminating his employment. The operative second amended petition for writ of mandate, filed June 15, 2009, asserted the Board abused its discretion and violated his contractual and legal rights

10

by, among other things, concluding the termination was justified "without issuing any factual findings" or "conducting any substantial factual inquiry." The petition also claimed the Board violated Castro's right to due process under the state and federal Constitutions by (1) not providing a fair hearing and issuing a conclusory decision without providing Castro with an opportunity to be heard, (2) imposing an unreasonably harsh penalty, and (3) failing to properly consider the evidence Castro offered in opposition to his termination.

In Castro's points and authorities in support of the writ petition, he argued three points: (1) the Board abused its discretion by considering a letter of exception the City sent to the arbitrator following his decision; (2) the Board abused its discretion by reversing the arbitrator's decision under Code of Civil Procedure[4] section 1286.2 because the arbitrator did not exceed his powers; and (3) the Board abused its discretion and violated Castro's due process rights by failing to provide reasonable notice the Board was considering reversing the arbitrator's decision based on the letter of exception.

In response, the City first argued Castro's writ petition was barred by the 90-day statute of limitations found in section 1094.6. Addressing Castro's arguments, the City explained the collective bargaining agreement provided the City with the right to file with the arbitrator exceptions to the arbitrator's proposed decision, but such exceptions would be limited to the grounds specified in section 1286.2, one of which states: "The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (§ 1286.2, subd. (a)(4).) The collective bargaining agreement also provided: "The arbitrator shall review the exceptions within ten (10) days of receipt and affirm or amend the proposed decision and file the jointly recommended proposed decision with the parties and the [Board] for action." The City argued: "Because the arbitrator exceeded his powers when he added

---

**4**      Undesignated statutory references are to the Code of Civil Procedure.

an additional element of proof to the [City's] case and reversed the termination because the [City] had not satisfied . . . the increased burden *he* created, the [City] exercised its right to draft a Letter of Exception pursuant to [the collective bargaining agreement]. The Letter was served on the arbitrator and [Castro]. [¶] The arbitrator failed to respond within the time period allowed. Since the proposed decision could not become final until the Board acted upon it, the [City] forwarded the proposed decision and the Letter of Exception to the [Board] for final action." The City noted the collective bargaining agreement "does not address how the [proposed] decision gets to the Board if the arbitrator fails to send it" and does not "prohibit[] either party from sending the proposed decision and Letter of Exception to the Board." The City also noted Castro did not object to the fact the City sent the proposed decision and letter of exception to the Board.

The City then explained that, pursuant to the collective bargaining agreement, the Board hearing was "conducted pursuant to the procedures of Rule 12 of the . . . Board," which, as previously stated, allowed the Board to adopt, modify, or reject the arbitrator's proposed decision. Thus, argued the City, while the collective bargaining agreement limited the parties' right to file exceptions to the arbitrator's proposed decision to the grounds set forth in section 1286.2, this does not mean the Board's authority to act upon the proposed decision is also limited to these grounds. With respect to Castro's due process claim, the City argued: "[Castro] provides no authority for his assertion that the Board was required to provide a 'statement of grounds' for decision. The reasons motivating the Board to modify the decision were clear. The Board was concerned about the arbitrator's conclusion that the [City] did not have good cause to terminate a violent employee based upon . . . his erroneous assumption that the [City] was required to prove an element not included in the [workplace violence policy]," i.e., intent to cause harm. The City also pointed out Castro "was given a full opportunity to participate in the discussion at the [Board] hearing." Finally, the City argued the administrative record

provided strong evidence supporting the Board's decision to reinstate termination as the appropriate penalty for Castro's violation of the workplace violence policy.

### *Writ Hearings*

The hearing on the writ petition was scheduled for October 22, 2010. Prior to the hearing, the trial court issued a tentative ruling concluding the writ petition was not barred by the 90-day statute of limitations found in section 1096.6 and Castro forfeited his arguments with respect to the Board's consideration of the City's letter of exception. The trial court ordered the parties to address the following issues at the scheduled hearing: "To what extent should the language iterated in [the workplace violence policy] that the 'City will take disciplinary action <u>up to and including termination</u>' (emphasis added) allow the Arbitrator to address intent in determining the range of appropriate penalty? If intent is not a relevant consideration, what factors, if any, should be considered in addressing the range of penalty?"

At the October 22, 2010, hearing, Castro's attorney argued the emphasized language "demonstrates the City's [workplace violence policy] allows for discipline that is less than termination. Now, in this instance then, zero tolerance really refers to the fact that the City has taken the stand to issue discipline if a violation is found, but that discipline doesn't necessarily -- isn't going to automatically be termination. It may be something less than termination. Thus, in order to determine what's less -- what may be an appropriate penalty less than termination, the Arbitrator is appropriately charged with the duty of investigating the surrounding circumstances, the various factors. [¶] And what we would say is that not only is the Arbitrator allowed to investigate and consider intent, really, is obligated to consider intent because intent is a fundamental consideration in culpability in criminal law and civil law. It's always considered, unless the situation calls for strict liability. Strict liability only applies when it's explicitly spelled out." Castro's attorney continued: "Here, the Arbitrator found that circumstances and intent mitigated the actions of [Castro] and that the just and appropriate remedy in these

13

circumstances was a 30-day suspension. The Arbitrator had the authority to consider the factor of intent and, therefore, impose a penalty that is less than termination." He concluded: "Therefore, the Arbitrator didn't exceed his powers by considering intent, and, therefore, the City and the [Board] do not have any legal basis to overturn the Arbitrator's award because the only grounds they have is under [section] 1286.2, and the only one of that section [the City] pulled out was that the Arbitrator exceeded his authority, which we argue the Arbitrator did not."

In response, counsel for the City argued: "What's important to remember is not that the Arbitrator simply considered [Castro's] intent at the time of the attack, it's that the Arbitrator charged the City with proving [his] intent; and not just any intent, but proving that [Castro] intended to violently and maliciously hurt [Santoyo]. It was that additional element of proof that the Arbitrator added to the City's burden, which caused the City to object [that] the Arbitrator[] exceed[ed] his authority. It wasn't just the consideration of intent. It was adding that to the City's burden of proof." Counsel continued: "The [workplace violence policy] covers more than just physical acts of violence, but also lesser occurrences, such as, threats, stalking, behavior which is frequently much less than a physically-violent attack. And because the policy covers a wider range of unacceptable behavior, the language which allows the City to impose discipline, up to and including termination, allows the City to consider factors in order to fashion a discipline which is appropriate to the level of the transgression." Counsel further argued: "Unfortunately for [Castro], his behavior was at the absolute outer end of what that policy is intended to address. It was not a -- it was not just a threat. It wasn't just a grabbing. It was a physical grabbing, touching and pulling back and then causing an injury to his supervisor. It doesn't get much worse than that, unless [he] had landed [Santoyo] in the hospital or threatened to kill her or pulled out a weapon. It was a grabbing accompanied with some profanity -- which [Santoyo] remembers it one way, [Griffith] remembers it another way -- but there was a statement that reflected [Castro's]

14

anger at having been paired with [Cornejo], and he was taking that out on [Santoyo]." Counsel also pointed to evidence in the administrative record revealing the City considered a number of factors in deciding to terminate Castro's employment, including the fact he "never acknowledged ever doing anything wrong and, quite the contrary, went on to lie about it," the fact "Castro had been with the City for many, many years and only had one prior instance of discipline ten years before," and the fact that "three days after this incident there was another incident where he was angry at his co-workers and swung his car around and spun the wheels." The trial court took the matter under submission.

On October 25, 2010, the trial court issued an order after submission pointing out the collective bargaining agreement required the arbitrator to file with the parties and the Board a " 'jointly recommended proposed decision' " and requesting further oral argument on three issues not material to the issue raised on appeal. The requested oral argument occurred on December 10, 2010, after which the matter was submitted for decision.

### *Trial Court Decision*

On March 3, 2011, the trial court issued a decision granting Castro's writ petition. The court ruled the petition was not barred by the 90-day statute of limitations found in section 1094.6, Castro forfeited his procedural due process arguments with respect to the Board's consideration of the City's letter of exception, the Board possessed discretion to adopt, modify, or reject the arbitrator's proposed decision, and the Board was not restricted by the grounds set forth in section 1286.2 in exercising that discretion. As to the substance of the Board's decision, the court concluded: "[T]he Board's decision rests on an improper and unsupported interpretation of the City's Workplace Violence Policy and constitutes a prejudicial abuse of discretion." The trial court explained: "Had the Board based its decision on the actual factual circumstances of the matter before it or other proper ground(s), its determination arguably would have fallen within its discretion. Instead, however, the Board's rejection of the Arbitrator's proposed reduced penalty is

15

premised on an erroneous interpretation of the City's Workplace Violence Policy as being one of 'zero tolerance.' The Board's conclusion that the Arbitrator was 'wrong as a matter of law' in considering [Castro's] intent when he [assaulted] his supervisor is undermined by the policy itself. Clearly, the plain language of the City's policy allows for progressive discipline 'up to and including termination,' thereby allowing for the consideration of mitigating factors such as the intent of the allegedly offending employee. The Board therefore abused its discretion in rejecting the Arbitrator's decision."

Judgment was entered on April 15, 2011, granting Castro's writ petition and remanding the matter to the Board for reconsideration. The City filed a timely notice of appeal.

DISCUSSION

I

***Judicial Review of Administrative Disciplinary Decisions***

The final administrative decision of a city to discipline one of its employees is reviewable by petition for administrative mandate under section 1094.5, which provides in relevant part: "(b) The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence. [¶] (c) Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence. In all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record." (See *Kazensky v. City of Merced* (1998) 65

16

Cal.App.4th 44, 51; see also *Lanigan v. City of Los Angeles* (2011) 199 Cal.App.4th 1020, 1029.)

"The statute distinguishes between 'cases in which the court is authorized by law to exercise its independent judgment on the evidence' (. . . § 1094.5, subd. (c)) and cases in which the court is not so authorized. Sometimes a statute will expressly direct the [trial] court to exercise its independent judgment in cases in which it reviews the findings of a particular agency. For example, Education Code section 44945 provides that in certain cases heard by the Commission on Professional Competence involving teacher dismissals, '[t]he court, on review, shall exercise its independent judgment on the evidence.' Even if there is no statute expressly directing the [trial] court to exercise its independent judgment on the evidence, the California Supreme Court has held that in certain types of cases the [trial] court must nevertheless exercise independent review. 'If the order or decision of the agency substantially affects a fundamental vested right, the trial court, in determining under section 1094.5 whether there has been an abuse of discretion because the findings are not supported by the evidence, must exercise its independent judgment on the evidence and find an abuse of discretion if the findings are not supported by the weight of the evidence.' " (*Kazensky v. City of Merced*, *supra*, 65 Cal.App.4th at p. 51, quoting *Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 32; see also *Bixby v. Pierno* (1971) 4 Cal.3d 130, 143 [where an administrative agency decision substantially affects a fundamental vested right, the trial court must exercise its independent judgment upon the evidence].)

"Discipline imposed on city employees affects their fundamental vested right in their employment." (*McMillen v. Civil Service Com.* (1992) 6 Cal.App.4th 125, 129; *Boctor v. Los Angeles County Metropolitan Transit Authority* (1996) 48 Cal.App.4th 560, 572-573; see also *Schmitt v. City of Rialto* (1985) 164 Cal.App.3d 494, 500.) Thus, with respect to whether a city employee has engaged in misconduct warranting discipline, the trial court is required to "exercise its independent judgment on the evidence and find an

abuse of discretion if the [agency's] findings of [the employee's] misconduct [are] not supported by the weight of the evidence." (*Boctor v. Los Angeles County Metropolitan Transit Authority, supra*, 48 Cal.App.4th at p. 573.)  Where the trial court " 'is required to make such an independent judgment upon the record of an administrative proceeding, the scope of review on appeal is limited.  An appellate court must sustain the [trial] court's findings if substantial evidence supports them.  [Citations.]  In reviewing the evidence, an appellate court must resolve all conflicts in favor of the party prevailing in the [trial] court and must give that party the benefit of every reasonable inference in support of the judgment.  When more than one inference can be reasonably deduced from the facts, the appellate court cannot substitute its deductions for those of the [trial] court.  [Citation.]' " (*Pasadena Unified Sch. Dist. v. Commission on Professional Competence* (1977) 20 Cal.3d 309, 314.)  " 'Evidence is substantial if any reasonable trier of fact could have considered it reasonable, credible and of solid value.'  [Citations.]" (*Kazensky v. City of Merced, supra*, 65 Cal.App.4th at pp. 52-53.)

After the trial court has independently reviewed the record of the administrative proceeding and concluded the weight of the evidence supports the agency's finding of misconduct, "the imposition of the appropriate penalty for that misconduct is left to the sound discretion of the agency." (*Kazensky v. City of Merced, supra*, 65 Cal.App.4th at p. 53.)  " 'The [trial] court 'is not free to substitute its opinion for that of the administrative body as to an appropriate disciplinary measure.'  [Citation.]  'The appellate court's review of the degree of discipline imposed . . . remains the same as that appropriate to the trial court:  The discipline imposed will not be disturbed unless it is shown to have been a manifest abuse of discretion.'  [Citation.]  'Neither a trial court nor an appellate court is free to substitute its discretion for that of an administrative agency concerning the degree of punishment imposed.'  [Citation.]  'In reviewing the exercise of this discretion we bear in mind the principle "[c]ourts should let administrative boards and officers work out their problems with as little judicial interference as possible. . . .

18

Such boards are vested with a high discretion and its abuse must appear very clearly before the courts will interfere." ' [Citations.]" (*Id*. at pp. 53-54.)

With these principles of judicial review in mind, we turn to the argument raised on appeal.

## II

### *Analysis*

The City argues we must reverse the judgment granting Castro's writ petition because there is no substantial evidence to support the trial court's conclusion that "the Board's decision rested on an erroneous and unsupported interpretation of [the workplace violence policy] which demanded the imposition of termination in all instances of workplace violence." In response, Castro argues the trial court correctly interpreted the workplace violence policy to require consideration of mitigating factors such as intent in determining the appropriate level of discipline to be imposed for violations of the policy. He urges us to affirm the trial court's judgment because, while the arbitrator properly considered his intent in recommending suspension instead of termination, the Board failed to consider such mitigation when it rejected the proposed reduction in penalty.[5]

The legal principles that govern the Board's decision as to whether to uphold the City's decision to terminate Castro's employment are found in the City's workplace violence policy. This policy provides: "The City will not tolerate violent behavior or

---

[5] We note at the outset Castro does not assert on appeal that the trial court erred in failing to exercise its independent judgment on the question of whether he engaged in the misconduct that resulted in his termination. (See *Boctor v. Los Angeles County Metropolitan Transit Authority*, *supra*, 48 Cal.App.4th at p. 573.) The trial court appears to have assumed without deciding that the arbitrator's finding of misconduct, which was adopted by the Board, was supported by the weight of the evidence, and focused its attention on the second stage of the analysis, i.e., whether the Board abused its discretion in imposing termination as the appropriate penalty for Castro's misconduct. (See *Kazensky v. City of Merced*, *supra*, 65 Cal.App.4th at pp. 53-54.) Neither party objected to the trial court's approach. Accordingly, we also confine our discussion to the second stage of the analysis.

threats in the workplace. Any violent behavior related to the employee's work or work relationships, whether an employee is on or off duty, on or off City property or City workplaces, is prohibited. Violations of this policy will be investigated, and if substantiated, the City will take disciplinary action *up to and including termination*." (Rule 12, italics added.) The City acknowledges the above italicized language means that "mitigating factors such as degree of harm, aggressor's intent, [and] contrition" may be considered by the Board in determining the appropriate discipline to be imposed. Here, the Board declined to take Castro's intent into consideration when deciding to reject the arbitrator's proposed reduction in penalty and approve the City's penalty of termination. We conclude the Board abused its discretion by not considering mitigating factors, such as the intent of Castro when the assault occurred, in determining the appropriate discipline. The City's policy allows for progressive discipline up to and including termination, thereby allowing for the consideration of mitigating factors. In fact, the parties agree that under the policy, mitigating factors such as intent may be considered in determining the appropriate level of discipline.

The City also argues there is no substantial evidence to support the trial court's conclusion the Board interpreted the workplace violence policy as being one of zero tolerance, i.e., demanding termination in all cases. The City takes issue with the following statements in the trial court's ruling: "Had the Board based its decision on the actual factual circumstances of the matter before it or other proper ground(s), its determination arguably would have fallen within its discretion. Instead, however, the Board's rejection of the Arbitrator's proposed reduced penalty is premised on an erroneous interpretation of the City's Workplace Violence Policy as being one of 'zero tolerance.' The Board's conclusion that the Arbitrator was 'wrong as a matter of law' in considering [Castro's] intent when he [assaulted] his supervisor is undermined by the policy itself."

20

The statements by Board members during the meeting do not show a consistent understanding of the City's policy. The City points out that one of the Board members stated at the hearing that the "real question" was "what is the appropriate remedy ― termination or something less[?]" This statement, argues the City, "patently contradicts" the trial court's conclusion that the Board interpreted the workplace violence policy as being one of zero tolerance. However, immediately after this statement was made, another Board member stated: "I am bothered that [the arbitrator] has inserted this additional burden of proof that is not present in law . . . . *I think the whole idea of ending workplace violence is not to get into the whole intent thing*, and he added that." (Italics added.) A third Board member agreed with this statement and added the arbitrator's decision was "very disconcerting." Thereafter, the first Board member, who acknowledged the workplace violence policy allowed for disciplinary action up to and including termination, also stated she "completely disagree[d] with the addition of the intent element in the [arbitrator's] decision." It appears the Board understood there to be a range of discipline that could be imposed for violations of the City's workplace violence policy and did not interpret the City's "zero tolerance" policy as requiring termination in all cases. However, the Board did not believe Castro's intent should play a role in determining the appropriate level of discipline. This is an incorrect interpretation of the City's policy.

"Legal discretion means an impartial discretion *taking into account all relevant facts*, together with legal principles essential to an informed and just decision." (*Blake v. State Personnel Board* (1972) 25 Cal.App.3d 541, 553, italics added.) Here, as the arbitrator correctly found, "the intent of the [discharged employee] when he performed the acts in question and other mitigating circumstances" are relevant to the issue of whether termination is the appropriate penalty for violation of the workplace violence policy. While the arbitrator properly considered Castro's intent in recommending

21

suspension instead of termination, the Board did not consider this relevant factor when it rejected the proposed reduction in penalty.

Based on this record, we conclude the Board abused its discretion when it failed to consider intent as a mitigating factor in determining the appropriate discipline. Accordingly, we affirm the judgment granting Castro's petition for writ of administrative mandate and remanding the matter to the Board for reconsideration.

DISPOSITION

The judgment granting Victor Castro's petition for writ of administrative mandate and remanding the matter to the Civil Service Board for reconsideration is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.891(a)(4).)


        HOCH        , J.


We concur:


      BLEASE      , Acting P.J.


     NICHOLSON    , J.

22